UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MNA GLOVES SDN BHD, a Malaysia Private Limited Company,

Plaintiff,

v.

LONDON LUXURY LLC, a New York Limited Liability Company,

Defendant.

CASE NO. 7:25-cv-07619-CS

**LONDON LUXURY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND ALTERNATIVELY TO DISMISS FOR FAILURE TO STATE A CLAIM**

Dated: February 13, 2026

**COZEN O'CONNOR**

By: *<u>/s/Jeffrey M. Monhait</u>*
Jeffrey M. Monhait
Emma Scully
3WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Tel: 215-665-2084
212-453-3875
Email: jmonhait@cozen.com
escully@cozen.com

*Attorneys for Defendant*
*London Luxury LLC*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

RELEVANT FACTUAL BACKGROUND ..... 2

ARGUMENT ..... 3

I. THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF BINDING ARBITRATION. ..... 3

A. Legal Standard. ..... 4

B. The Parties Entered a Valid Agreement to Arbitrate. ..... 5

C. An Arbitrator Must Resolve Any Dispute Concerning the Arbitrability of MNA's Claims. ..... 6

D. MNA's Claims Fall Within the Broad Scope of the Agreement's Arbitration Provision. ..... 9

E. The Court Should Dismiss the Case. ..... 13

II. THE COURT SHOULD DISMISS MNA'S UNJUST ENRICHMENT AND FRAUD CLAIMS. ..... 14

A. Legal Standard. ..... 14

B. MNA Fails to State a Claim for Fraudulent Inducement (Count III). ..... 15

C. MNA's Unjust Enrichment Claim (Count II) Is Duplicative of Its Contract Claim. ..... 19

III. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*,
669 F. Supp. 2d 430 (S.D.N.Y. 2009)........................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................14

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)........................................................................4

*Atlantica Holdings, Inc. v. BTA Bank JSC*,
No. 13-CV-5790 (JMF), 2015 WL 144165 (S.D.N.Y. 2015)........................................5

*Bank Midwest, N.A. v. Hypo Real Est. Cap. Corp.*,
No. 10-CV-232 (WHP), 2010 WL 4449366 (S.D.N.Y. Oct. 13, 2010)......................20

*Bautista v. CytoSport, Inc.*,
223 F. Supp. 3d 182 (S.D.N.Y. 2016) (Seibel, J.)........................................................20

*Beijing Shougang Mining Inv. Co. v. Mongolia*,
11 F.4th 144 (2d Cir. 2021)........................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................14

*Benzemann v. Citibank N.A.*,
622 F. App'x 16 (2d Cir. 2015)........................................................................5, 13

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir. 1993)........................................................................16

*Cartagena Enters., Inc. v. J. Walter Thompson Co.*,
No. 13-CV-4238 (SAS), 2013 WL 5664992 (S.D.N.Y. Oct. 16, 2013)....................7, 8

*Cisco Sys., Inc. v. Chung*,
No. 19-CV-07562, 2021 WL 427293 (N.D. Cal. Feb. 8, 2021)..................................12

*Coinmint, LLC v. Main Mill St. Invs., LLC*,
No. 8:18-CV-1404, 2019 WL 4015687 (N.D.N.Y. Aug. 26, 2019)............................16

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)....................4, 12

*Contec Corp. v. Remote Solution, Co., Ltd.*,
398 F.3d 205 (2d Cir. 2005)....................7

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)....................14

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................4

*Eaves v. Designs for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011) (Seibel, J.)....................18

*Fin. Tech. Partners LP v. Circle Internet Fin. Ltd.*,
No. 24-CV-4717 (VM), 2025 WL 897133 (S.D.N.Y. Mar. 24, 2025)....................19, 20

*Frigitemp Corp. v. Financial Dynamics Fund, Inc.*,
524 F.2d 275 (2d Cir. 1975)....................16

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)....................4

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)....................6

*IKB Int'l S.A. v. Bank of Am.*,
No. 12-CV-4036 (LAK), 2014 WL 1377801 (S.D.N.Y. Mar. 31, 2014),
*aff'd sub nom. IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26 (2d Cir. 2014)....................17

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)....................4, 5

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)....................13

*LaVoice v. UBS Fin. Servs., Inc.*,
No. 11-CV-2308 (BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)....................5

*LAVVAN, Inc. v. Amyris, Inc.*,
No. 21-1819, 2022 WL 4241192 (2d Cir. Sept. 15, 2022)....................12

*Lobban v. Cromwell Towers Apts., L.P.*,
345 F. Supp. 3d 334 (S.D.N.Y. 2018) (Seibel, J.) ....................................................... 13

*Mahoney v. Endo Health Sols., Inc.*,
No. 15-CV-9841, 2016 WL 3951185 (S.D.N.Y. July 20, 2016) ................................ 19

*Marshall v. Hyundai Motor Am.*,
51 F. Supp. 3d 451 (S.D.N.Y. 2014) ............................................................................ 19

*Merrick v. UnitedHealth Grp., Inc.*,
127 F. Supp. 3d 138 (S.D.N.Y. 2015) ............................................................................ 5

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007) ......................................................................................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ...................................................................................................... 4, 11

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) ....................................................................................... 10

*Nunez v. Citibank, N.A.*,
No. 08-CV-5398 (BSJ), 2009 WL 256107 (S.D.N.Y. Feb. 3, 2009) ........................... 5

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996) ......................................................................................... 11

*Pilot Inc. v. Tyc Brother Indus. Co.*,
No. 2:20-CV-02978, 2020 WL 3833597 (C.D. Cal. July 8, 2020) ............................... 8

*Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*,
No. 15-CV-2473 (CS), 2019 WL 4126464 (S.D.N.Y. Aug. 30, 2019) ......................... 6

*Purcell v. Navient Sols., LLC*,
No. 18-CV-6045 (CS), 2019 WL 188693 (S.D.N.Y. Jan. 14, 2019) ....................... 5, 13

*Republic of Ecuador v. Chevron Corp.*,
638 F.3d 384 (2d Cir. 2011) ........................................................................................... 6

*Schlenger v. Fid. Emp. Servs. Co., LLC*,
785 F. Supp. 2d 317 (S.D.N.Y. 2011) (Seibel, J.) ....................................................... 18

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
263 F.3d 26 (2d Cir. 2001) ............................................................................................. 4

*Stephenson v. PricewaterhouseCoopers, LLP*,
482 F. App'x 618 (2d Cir. 2012) ..................................................................... 15

*Teamsters Local 456, Int'l Bhd. of Teamsters, AFL-CIO v. AMEC Com., LLC*,
No. 18-CV-854 (CS), 2019 WL 3429594 (S.D.N.Y. July 30, 2019) ......................... 13

*Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*,
No. 24-CV-02423, 2024 WL 4634059 (N.D. Cal. Oct. 29, 2024) ............................... 8

*United States v. Szur*,
289 F.3d 200 (2d Cir. 2002)........................................................................... 16

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
830 F.3d 1335 (Fed. Cir. 2016)........................................................................ 12

*VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*,
717 F.3d 322 (2d Cir. 2013)............................................................................. 9

*Woori Bank v. RBS Sec., Inc.*,
910 F. Supp. 2d 697 (S.D.N.Y. 2012)................................................................ 15

*WTA Tour, Inc. v. Super Slam Ltd.*,
339 F. Supp. 3d 390 (S.D.N.Y. 2018)................................................................. 8

*Zap v. Mortg. Elec. Registration Sys., Inc.*,
No. 6:15-CV-00624, 2016 WL 6471229 (N.D.N.Y. Nov. 1, 2016)........................... 16

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 4.................................................................... 4

**Other Authorities**

American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, Rule 7(a) ........................................................................ 8

Singapore International Arbitration Centre, *Arbitration Rules*,
Section VI Rule 31 ........................................................................................ 7, 8

## INTRODUCTION

In its First Amended Complaint (ECF No. 16, the "Amended Complaint"), Plaintiff MNA Gloves SDN BHD ("MNA") alleges that London Luxury LLC ("London Luxury") breached a 2021 Sales Purchase Agreement (the "Agreement") between MNA and London Luxury. That Agreement—which MNA admits is a "legally binding contract between the Parties," ECF No. 16 ¶ 290—contains a clear, binding, mandatory arbitration provision. That is the end of the matter, and this case must proceed, if at all, in arbitration.

In a poor attempt to avoid arbitration, MNA points to the Agreement's narrow exception to arbitration for certain intellectual property disputes (even though MNA has not asserted any such dispute). The Court does not even have to consider MNA's argument, because the Agreement requires that an arbitrator—not the Court—resolve any dispute regarding the applicability of the arbitration provision to MNA's claims. The Second Circuit and this Court have reached that precise conclusion in interpreting similar arbitration provisions, and MNA cannot avoid this clear precedent.

Even if the Court considers MNA's argument, this case has nothing to do with intellectual property. MNA claims that London Luxury breached certain contractual obligations, and fraudulently induced MNA to amend the Agreement—claims that fit squarely within the broad scope of the Agreement's arbitration provision. MNA cannot transform these claims into an intellectual property dispute with sparse, self-serving references to purported *third party* intellectual property. Even under MNA's framing, MNA would still be subject to mandatory arbitration because the Agreement's narrow exception applies only to disputes concerning the *parties'* intellectual property—not

purported third party intellectual property. MNA's flimsy argument should be seen for what it is—a vain attempt to enforce parts of the Agreement it likes, and circumvent parts it does not like. That is not how contracts work, and MNA cannot avoid arbitration.

Finally, if the Court reaches the merits of MNA's claims, MNA fails to state a plausible claim for fraudulent inducement and unjust enrichment. Plaintiff's fraudulent inducement claim—which must clear the additional hurdle set by Fed. R. Civ. P. 9(b)—rests on specious, contradictory allegations and fails to show that London Luxury made a material misrepresentation or had a duty to disclose any material information. MNA's unjust enrichment claim is equally ill-fated, as it duplicates MNA's breach of contract and fraud counts.

## RELEVANT FACTUAL BACKGROUND

On April 7, 2021, MNA and London Luxury entered into the Agreement, pursuant to which MNA agreed to package and ship nitrile gloves in exchange for payment by London Luxury. *See* ECF No. 16-2; *see also* ECF No. 16 ¶ 51. MNA alleges that, under the Agreement, London Luxury was responsible for securing a letter of credit ("Letter of Credit") to secure its payment obligations to MNA. ECF No. 16 ¶ 11.

The Agreement contained an arbitration clause. *See* ECF No. 16-2 § 8.2. That clause provides that, subject to one narrow exception, "any dispute or Action arising out of or in connection with this Contract, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of Singapore International [A]rbitration Centre ('SIAC Rules')." *Id.* The single exception to arbitration is for disputes "regarding any

Intellectual Property rights of [London Luxury] or any of its Customers." *Id.* § 8.3. The Agreement defines "Intellectual Property" as "intellectual property rights that [were] developed and/or owned by either Party prior to and independently of its arrangements with the other Party under this Contract…" *Id.* ¶ 3.1.23. That definition does not include third party intellectual property. *See id.* The Agreement similarly defines "[London Luxury's] Intellectual Property" as "any rights to Intellectual Property that [were] owned by [London Luxury] prior to and independently of its dealings with [MNA] under this Contract." *Id.* ¶ 3.1.30.

On August 26, 2021, the Parties executed the Second Amendment to the Agreement. *See* ECF No. 16 ¶ 52; *see also* ECF No. 16-3 (the "Second Amendment"). On January 31, 2022, London Luxury terminated the Agreement. ECF No. 16 ¶ 258; *see also* ECF No. 16-4 (the "Termination Letter"). The Termination Letter cited several bases for terminating the Agreement, including MNA's failure to comply with the audit and social audit requirements in accordance with the Second Amendment; MNA's failure to provide written certification of the origin of the goods; MNA's failure to procure goods in accordance with the terms of the Agreement; and MNA's drawdown from the Letter of Credit in violation of the terms of the Agreement. *See* ECF No. 16-4.

## ARGUMENT

### I. <u>THE COURT SHOULD DISMISS THIS ACTION IN FAVOR OF BINDING ARBITRATION.</u>

This dispute is subject to binding arbitration under the Agreement. Thus, the Court should dismiss MNA's action, as this case must proceed, if at all, in arbitration.

### A. Legal Standard.

Under Section 4 of the Federal Arbitration Act ("FAA"), a party to an arbitration agreement may petition a court for an order that arbitration proceed in the manner provided for in such agreement. *See* 9 U.S.C. § 4. The FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted).

Federal courts have long recognized a strong federal presumption in favor of arbitration as an alternative means of dispute resolution. *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 29 (2d Cir. 2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "Accordingly, federal policy requires [courts] to construe arbitration clauses as broadly as possible." *Id.* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)). As a result, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotations and citations omitted).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on

issues as to which an arbitration agreement has been signed." *Merrick v. UnitedHealth Grp., Inc.*, 127 F. Supp. 3d 138, 146 (S.D.N.Y. 2015) (citing *Atlantica Holdings, Inc. v. BTA Bank JSC*, No. 13-CV-5790 (JMF), 2015 WL 144165, at *6 (S.D.N.Y. 2015)). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *LaVoice v. UBS Fin. Servs., Inc.*, No. 11-CV-2308 (BSJ) (JLC), 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (quoting *Nunez v. Citibank, N.A.*, No. 08-CV-5398 (BSJ), 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009)); *see also, e.g.*, *Purcell v. Navient Sols., LLC*, No. 18-CV-6045 (CS), 2019 WL 188693, at *8 (S.D.N.Y. Jan. 14, 2019) ("absent request [to stay], no requirement that district court stay rather than entering judgment against plaintiff after granting motion to compel arbitration") (citing *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015)).

The Second Circuit applies a two-part test to motions to compel arbitration: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp.*, 672 F.3d at 128. As set forth below, the Court must compel arbitration in this case.

### B. <u>The Parties Entered a Valid Agreement to Arbitrate.</u>

It is undisputed that the Agreement is a valid arbitration agreement. *See* ECF No. 16 ¶ 290 (MNA admitted the Agreement is "a legally binding contract between the Parties."). MNA does not contest the validity of the Agreement (other than the Second Amendment), nor does it argue the arbitration provision contained in Section 8.2 is invalid. *See generally*, ECF No. 16. MNA submitted the Agreement as part of its Amended

Complaint, *see* ECF No. 16-2, and MNA does not contend that the Agreement, or any discrete portion, is unenforceable. *See generally*, ECF No. 16. Accordingly, the arbitration provision in the parties' Agreement is valid.

### C. An Arbitrator Must Resolve Any Dispute Concerning the Arbitrability of MNA's Claims.

The Court does not need to consider MNA's arguments about whether its claims fall within the scope of the Agreement's arbitration provision because the Agreement reserves any such dispute for an arbitrator to resolve. "The Supreme Court has distinguished between 'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,' which are presumptively reserved for the arbitrator's resolution." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)). "The question [of] whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 153 (2d Cir. 2021) (quoting *Howsam*, 537 U.S. at 83).

Clear and unmistakable evidence includes the incorporation of arbitration rules—like the American Arbitration Association ("AAA") Rules or the SIAC Rules—that vest the arbitrator with jurisdiction to resolve such disputes. *See Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*, No. 15-CV-2473 (CS), 2019 WL 4126464, at *5 (S.D.N.Y. Aug. 30, 2019) ("[T]he incorporation of the AAA Rules into the License Agreement serves as clear

and unmistakable evidence that, for disputes relating to the License Agreement, the parties agreed to delegate any questions of arbitrability to the arbitrator."); *Cartagena Enters., Inc. v. J. Walter Thompson Co.*, No. 13-CV-4238 (SAS), 2013 WL 5664992, at *2–3 (S.D.N.Y. Oct. 16, 2013) (same).

MNA's dispute as to whether its claims are subject to arbitration—including whether MNA's claims fall under the narrow intellectual property exception—is one that an arbitrator must resolve pursuant to the Agreement. The Agreement provides that "any dispute or Action arising out of or in connection with this Contract, including any question regarding its existence, validity, or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ('SIAC Rules')." ECF No. 16-2 § 8.2. The SIAC Rules, in turn, provide that the "[t]ribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, validity, applicability, or scope of the arbitration agreement." Singapore International Arbitration Centre, *Arbitration Rules*, Section VI Rule 31, available at https://siac.org.sg/wp-content/uploads/2025/04/SIAC-Rules-7th-Edition_250825.pdf. Thus, the SIAC Rules, which the parties incorporated into the Agreement, make clear that an arbitrator must resolve any questions about whether particular claims are subject to binding arbitration.

The Second Circuit has expressly held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). This Court,

and others in this Circuit, have routinely found an intent to arbitrate issues of arbitrability where an agreement incorporates the AAA Rules. *See WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 402 (S.D.N.Y. 2018) (granting motion to compel arbitration and referring all issues as to scope of arbitration to the arbitrator because contract incorporated AAA Rules); *Cartagena Enters.*, 2013 WL 5664992, at *3 (compelling arbitration as to question of arbitrability of copyright claim because contract incorporated AAA Rules).

Courts have reached the same conclusion where an agreement incorporates the SIAC Rules. *See, e.g.*, *Pilot Inc. v. Tyc Brother Indus. Co.*, No. 2:20-CV-02978, 2020 WL 3833597, at *3–4 (C.D. Cal. July 8, 2020) ("[T]he parties' incorporation of the SIAC Rules into the [contract at issue] clearly and unmistakably delegates arbitrability to the arbitrator."); *Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*, No. 24-CV-02423, 2024 WL 4634059, at *9 (N.D. Cal. Oct. 29, 2024), *motion to certify appeal denied*, No. 24-CV-02423, 2025 WL 107866 (N.D. Cal. Jan. 15, 2025) (same). While this Circuit has not addressed the SIAC Rules specifically, there is no meaningful distinction between an arbitration provision incorporating the AAA Rules and one incorporating the SIAC Rules. Notably, the relevant language of the SIAC Rules and the AAA Rules is almost identical. *Compare* SIAC Rules, Section VI Rule 31, *with* American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, Rule 7(a), available at https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters

first to a court."). Additionally, the Second Circuit has not hesitated to extend its holding to other international arbitration rules, including the International Chamber of Commerce Court of Arbitration. *See VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 326 (2d Cir. 2013). MNA cannot avoid this binding precedent, and an arbitrator—not the Court—must resolve MNA's dispute as to whether its claims fall within the scope of the Agreement's broad arbitration provision.

**D. <u>MNA's Claims Fall Within the Broad Scope of the Agreement's Arbitration Provision.</u>**

Although the Agreement unambiguously delegates questions of arbitrability to the arbitrator, if the Court reaches the issue, MNA's claims fall within the scope of the arbitration clause. The clause, which covers "any dispute arising out of or in connection with" the Agreement, *see* ECF No. 16-2 § 8.2, clearly encompasses MNA's contract, quasi-contract, and fraudulent inducement claims.

The only narrow exception to the Agreement's broad arbitration provision is for certain disputes concerning the *parties'* intellectual property disputes, *see id.* § 8.3, but MNA's claims have nothing to do with intellectual property. Section 8.3 of the Agreement provides that with respect to any disputes "in relation to issues in controversy regarding any Intellectual Property rights of [London Luxury] or any of its Customers," the Agreement will be interpreted in accordance with the laws of the United States.[1] The

[1] The provision also has a forum-selection clause specifying, in relevant part, that "any action relative to disputed Intellectual Property Rights of any kind . . . arising from or relating to this Contract" shall be brought in the U.S. District Court for the Southern District of New York (or New York state courts if federal jurisdiction is lacking). *See id.*

Agreement defines "Intellectual Property" to mean "intellectual property rights that [were] *developed and/or owned by either Party* prior to and independently of its arrangements with the other Party under this Contract." *Id.* § 3.1.23 (emphasis added).[2] The provision does not reference third party intellectual property or licenses. *Id.*

MNA's only allegation that even references purported intellectual property rights is MNA's allegation that London Luxury failed to obtain permission from a nonparty, Ansell Limited ("Ansell"), to repackage and resell Ansell brand gloves. *See* ECF No. 16 ¶¶ 10, 12, 93–97. Specifically, MNA avers that the Agreement authorized MNA to repackage and export only Ansell brand gloves, but London Luxury did not have a license or permission to repackage and resell Ansell brand gloves. *Id.* ¶¶ 96–97. MNA also alleges that Ansell "did not allow other companies to put their branding on and resell Ansell Gloves." *Id.* ¶ 100. These sparse allegations do not amount to an intellectual property dispute, much less one that fits the Agreement's narrow exception to arbitration.

First, even crediting MNA's conclusory, self-serving labels, MNA has attempted to allege a dispute regarding *third party* intellectual property, but the Agreement's intellectual property exception only applies to disputes concerning the *parties'* intellectual property. "[A]rbitration is a matter of contract . . . and . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *NASDAQ OMX Grp., Inc. v. UBS*

[2] The Agreement specifies that London Luxury's intellectual property includes London Luxury's "Packaging Material and all data, writings, and other property in any form whatsoever, which is provided to [MNA] by or on behalf of [London Luxury], and which was owned or controlled by [London Luxury] and/or its respective Affiliates . . . prior to being provided to or used by [MNA] hereunder." *Id.* § 3.1.30.

*Sec., LLC*, 770 F.3d 1010, 1033 (2d Cir. 2014). The Agreement defines "Intellectual Property" to encompass only the rights of London Luxury and MNA—not third parties like Ansell. Even if the definition was not so clearly circumscribed, the Court should nonetheless resolve any doubts in favor of arbitration in light of FAA policy. *See, e.g.*, *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("Where the arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" (quoting *Moses H. Cone*, 460 U.S. at 24–25)). Because MNA's allegations concern—at most—only the purported intellectual property rights of *Ansell*, this dispute does not fall within the Agreement's limited exception to arbitration in Section 8.3.

Second, even if Ansell's intellectual property rights could trigger Section 8.3, MNA's cursory references to such rights still would not transform MNA's contract and fraud claims into a "dispute . . . regarding any Intellectual Property Rights." *See* ECF No. 16-2 § 8.3. There are no intellectual property rights at issue here, and MNA's allegations regarding Ansell's purported intellectual property rights are entirely tangential to its claims. The crux of MNA's contract claim is that the Agreement obligated MNA to "repackage [and ship] certain amounts of Gloves," ECF No. 16 ¶¶ 75–80, and MNA alleges that London Luxury (1) failed to arrange for a supplier of gloves for MNA to repackage, and (2) failed to place orders with MNA—and pay MNA for—gloves "to be obtained, repackaged, stored, and expired," *id.* ¶ 20. That is a contract dispute, not an intellectual property dispute.

MNA cannot change the nature of the dispute with self-serving allegations about whether either party had a license to repackage or resell Ansell gloves, because such conclusory labels are not a basis to avoid arbitration. "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 21–22 (2d Cir. 1995). MNA's claim is plainly a contract claim, and MNA's attempt to manufacture an intellectual property dispute should be seen for exactly what it is—a ploy to avoid a binding arbitration agreement.

Indeed, where courts have applied intellectual property exceptions to arbitration, the claims "put the scope of licensed [intellectual property] rights in issue." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1340 (Fed. Cir. 2016) (defendant brought counterclaims for declaratory judgment of non-infringement, and contract claims were predicated on the finding that infringement allegations were meritless); *see also LAVVAN, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL 4241192, at *3 (2d Cir. Sept. 15, 2022) (claims for trade secret misappropriation "clearly concern[ed] the ownership, enforceability, and infringement of intellectual property rights," as was required under the contract). In contrast, courts do not hesitate to reject attempts to utilize such an exception when a party simply attempts to re-label a non-intellectual property claim, as MNA has done here. *See Cisco Sys., Inc. v. Chung*, No. 19-CV-07562, 2021 WL 427293, at *5 (N.D. Cal. Feb. 8, 2021) ("[L]one assertion" that a contract sought "to gain ownership over [defendant's]

personal ideas and personal work solutions . . . is simply insufficient to convert an obvious challenge to the [contract's] enforceability into a claim for misappropriation of protected information.").

MNA's ordinary contract and fraud claims fall squarely under the Agreement's arbitration clause and are subject to the resounding judicial preference in favor of arbitration. Accordingly, the Court must compel arbitration as the parties intended under the Agreement.

### E. <u>The Court Should Dismiss the Case.</u>

"While the Second Circuit has held that 'the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration *and a stay requested*,'" when neither party requests a stay, "a stay is not required." *Purcell*, 2019 WL 188693, at *8 (first quoting *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015), and then citing *Benzemann*, 622 F. App'x at 18) (emphasis in original); *see also, e.g.*, *Teamsters Local 456, Int'l Bhd. of Teamsters, AFL-CIO v. AMEC Com., LLC*, No. 18-CV-854 (CS), 2019 WL 3429594, at *8 (S.D.N.Y. July 30, 2019) (granting motion to compel arbitration and dismissing action); *Lobban v. Cromwell Towers Apts., L.P.*, 345 F. Supp. 3d 334, 349 (S.D.N.Y. 2018) (Seibel, J.) (same).

London Luxury does not request a stay, and instead requests that this Court compel arbitration and dismiss this action. To the extent that MNA requests a stay, or the Court exercises its discretion to stay the case instead of dismissing it, London Luxury requests that the Court set a deadline for MNA to initiate arbitration of thirty (30) days after the entry of the Order compelling arbitration. If MNA does not provide the Court with notice

that it has initiated arbitration pursuant to the Agreement within that timeframe, this action should be dismissed. That will ensure that this matter does not linger on the Court's docket indefinitely, in the event that MNA elects not to initiate arbitration.

## II. THE COURT SHOULD DISMISS MNA'S UNJUST ENRICHMENT AND FRAUD CLAIMS.

This action is subject to binding arbitration, and the Court should dismiss this action in favor of arbitration. But if this Court were to consider the merits of MNA's Amended Complaint, MNA fails to state a claim for fraud or unjust enrichment.

### A. Legal Standard.

To avoid a Rule 12(b)(6) dismissal, MNA's Amended Complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555, and the pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action … do not suffice.").

A claim should be dismissed with prejudice when the "problem" with the complaint is "substantive," and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Even viewing the Amended Complaint in the light most favorable to

MNA, this Court must dismiss MNA's claims for fraud and unjust enrichment (Counts II and III).

### B. MNA Fails to State a Claim for Fraudulent Inducement (Count III).

To state a claim for fraudulent inducement under New York law, a claimant must allege that "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012), as amended (June 13, 2012) (summary order) (internal quotation marks and citation omitted); *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (stating that the fraudulent inducement elements are similar to common law fraud elements). In addition, "the Complaint must . . . state with particularity the circumstances of the fraud under Rule 9(b) and [contain] sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule 8(a)(2)." *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 700–01 (S.D.N.Y. 2012).

MNA's threadbare fraudulent inducement claim is premised on an omission as opposed to a misstatement. Specifically, the Amended Complaint states that "[a]t no material time before [MNA] executed the Second Amendment did [London Luxury] inform [MNA] about [London Luxury's] plans to set up its own nitrile glove manufacturing facility in the United States or about the increased order commitment from Walmart, albeit wrongfully obtained." ECF No. 16 ¶ 13; *see also id.* ¶¶ 133–49. However, MNA fails to

allege that London Luxury had any duty to disclose information of the kind alleged here, which is fatal to its fraudulent inducement claim. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (noting that claim for fraudulent inducement by omission additionally requires plaintiff to allege that defendant "had a duty to disclose the concealed fact"); *United States v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002) ("[W]hen dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose 'arises only when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'"); *see also Coinmint, LLC v. Main Mill St. Invs., LLC*, No. 8:18-CV-1404, 2019 WL 4015687, at *9 (N.D.N.Y. Aug. 26, 2019) (dismissing fraudulent inducement claim where plaintiff had "not made any allegation that [defendants] had a duty to disclose those omissions").

MNA unsuccessfully attempts to concoct a duty to disclose based on a theory of superior knowledge. *See* ECF No. 16 ¶¶ 133, 137–48. But MNA does not plausibly allege that London Luxury *knew* that MNA agreed to the Second Amendment in reliance on the mistaken knowledge about Walmart's increased purchase commitment and London Luxury's plans to begin manufacturing in the United States. A fraud claim based on superior knowledge "must allege that the defendant 'knew that the plaintiff was acting under a mistaken belief with respect to a material fact.'" *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993) (quoting *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir. 1975)). In other words, MNA must allege that London Luxury was on notice of MNA's ignorance, and that MNA agreed to the Second Amendment on the basis of that ignorance. *See, e.g.*, *Zap v. Mortg. Elec. Registration Sys.*,

*Inc.*, No. 6:15-CV-00624, 2016 WL 6471229, at *7 (N.D.N.Y. Nov. 1, 2016) (dismissing fraudulent concealment claim because complaint was "devoid of any allegation that [defendant] knew that [p]laintiff was acting on the basis of mistaken knowledge (or even that [p]laintiff was, in fact, acting on the basis of mistaken knowledge)); *IKB Int'l S.A. v. Bank of Am.*, No. 12-CV-4036 (LAK), 2014 WL 1377801, at *24 (S.D.N.Y. Mar. 31, 2014), *aff'd sub nom. IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26 (2d Cir. 2014) (similar). Other than a conclusory recitation in its fraud count, *see* ECF No. 16 ¶ 308, MNA fails to allege facts sufficient to plausibly infer that London Luxury knew MNA was acting on this alleged lack of knowledge.[3]

This defect reveals the more fundamental issue with MNA's fraudulent inducement claim, which is that MNA fails to raise any inference that the allegedly omitted information was material. Even if MNA had adequately alleged that London Luxury had a duty to disclose certain information, the Amended Complaint does not illustrate that this alleged omission was material or that it induced MNA's reliance—least of all that London Luxury *knew* of MNA's reliance. MNA alleges (in a conclusory manner) that, had it known of London Luxury's alleged plans to establish its own manufacturing facility or the increased order volume from Walmart, MNA would not have signed the Second Amendment. ECF

[3] MNA appears to suggest that London Luxury knew or should have known of MNA's ignorance because it knew MNA "and its primary representative were not sophisticated contracting parties." ECF No. 16 ¶ 143. MNA's own allegations regarding its business experience and acumen foreclose this theory. *See id.* ¶ 3 ("Plaintiff is a B2B company that transacts with North American businesses that resell the gloves from Plaintiff to either consumers or other businesses."); ¶ 4 (alleging MNA's sole owner and managing director is "a businessman of thirty-five (35) years' experience").

No. 16 ¶¶ 147–48. MNA's own allegations contradict that theory of reliance. The Amended Complaint repeatedly states that MNA entered the Second Amendment because MNA had already incurred significant costs in performing under the contract and that MNA believed the only way to continue doing business with London Luxury was to enter the Second Amendment. *See* ECF No. 16 ¶ 14 ("Worried that Defendant was going to continue breaching the Contract and would not otherwise ever perform, Plaintiff executed the Second Amendment."); ¶ 136 ("Plaintiff was concerned about being able to continue operations, pay its workers, and fulfill its rent obligations to the facility's landlord."); ¶ 140 ("Upon information and belief, Defendant led Plaintiff to believe that it did not have an option but to enter into the Second Amendment."); ¶ 144 ("[MNA] was concerned about keeping its business afloat and was concerned about [London Luxury] reneging on the Contract prior to entering into the Second Amendment.").

These allegations fall well short of Rule 9(b)'s stringent standard. Indeed, the allegations lack, in general, the detail required to survive a motion to dismiss a fraud-based claim, as the Amended Complaint omits key facts such as which representatives at either company were involved in negotiating the Second Amendment, and it does not set forth any alleged statement made in the course of the negotiations. *See, e.g.*, *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 248 (S.D.N.Y. 2011) (Seibel, J.) (dismissing fraud claim where plaintiffs did not identify which corporate representative made alleged representations, the time period, or the form the alleged representations took); *Schlenger v. Fid. Emp. Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011) (Seibel, J.)

("Plaintiff's failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9.").

### C. **MNA's Unjust Enrichment Claim (Count II) Is Duplicative of Its Contract Claim.**

MNA cannot maintain its unjust enrichment claim, which is premised on the exact same facts as its contract and fraud claims. "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016). "[W]hen a matter is controlled by contract, the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014). MNA's unjust enrichment claim is premised on London Luxury's alleged wrongful termination of the Agreement and alleged inducement to enter the Second Amendment. ECF No. 16 ¶ 298. But MNA fails to show how this count is distinct from its contract and fraud counts.

First, to the extent MNA's unjust enrichment claim is based on wrongful termination, the substance of that claim is government by the Agreement. A plaintiff "may plead unjust enrichment as an alternative theory of recovery to a breach of contract claim where the validity or enforceability of a written agreement is disputed or the written agreement does not cover the full scope of the dispute between the parties." *Fin. Tech. Partners LP v. Circle Internet Fin. Ltd.*, No. 24-CV-4717 (VM), 2025 WL 897133, at *6 (S.D.N.Y. Mar. 24, 2025). However, "the existence of a valid and enforceable written

contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* (internal quotations and citations omitted).

Neither exception applies here. The parties do not dispute the existence or enforceability of the Agreement. Nor does MNA's unjust enrichment claim fall outside the scope of the Agreement. The Agreement indisputably governs London Luxury's termination of the Agreement. *See* ECF No. 16-2 § 7.6 (providing for termination without cause where either party fails to perform its obligations). Thus, MNA's unjust enrichment claim for wrongful termination is inseparable from the duplicative contract claim in Count I. *See, e.g.*, *Bank Midwest, N.A. v. Hypo Real Est. Cap. Corp.*, No. 10-CV-232 (WHP), 2010 WL 4449366, at *4–5 (S.D.N.Y. Oct. 13, 2010) (dismissing unjust enrichment claim as duplicative where plaintiff premised unjust enrichment argument on breach of implied agency duties, because the contract set forth the terms of the agency relationship); *Fin. Tech. Partners*, 2025 WL 897133, at *6 (dismissing unjust enrichment claim as duplicative where plaintiff's unjust enrichment claim was premised on non-payment of fees and compensation following contract termination, because contract set forth fee and compensation structure).

Likewise, MNA's unjust enrichment claim based on the Second Amendment is a bald rehashing of its fraudulent inducement claim. *See, e.g.*, *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016) (Seibel, J.) (dismissing unjust enrichment claim where plaintiff "failed to explain how the unjust enrichment claim is not merely duplicative of" fraud counts). Accordingly, MNA's unjust enrichment claim must be dismissed.

## III. CONCLUSION

For the foregoing reasons, London Luxury respectfully requests that the Court dismiss this action in favor of binding arbitration. In the alternative, should the Court consider the merits of MNA's Amended Complaint, the Court should dismiss both Counts II and III of the Amended Complaint.

Dated: New York, New York
February 13, 2026

**COZEN O'CONNOR**

By: */s/Jeffrey M. Monhait*

Jeffrey M. Monhait
Emma Scully
3WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
215-665-2084
212-453-3875
jmonhait@cozen.com
escully@cozen.com

*Attorneys for Defendant*
*London Luxury LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this Memorandum of Law contains 5,731 words, and thus complies with the word-count limitations in Local Civil Rule 7.1(c). In making this certification, I have relied on the word count of the word-processing program used to prepare this Memorandum of Law.