**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MNA GLOVES SDN BHD**, a Malaysia Private Limited Company,<br><br>       Plaintiff,<br><br>       v.<br><br>**LONDON LUXURY LLC**, a New York Limited Liability Company,<br><br>       Defendant. | **Case No. 7:25-cv-7619**<br><br>**Hon. Cathy J. Seibel**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND ALTERNATIVELY TO DISMISS FOR FAILURE TO STATE A CLAIM** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION AND ALTERNATIVELY TO**
**DISMISS FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

Introduction.................................................................................................................................. 1

Facts ........................................................................................................................................... 2

Law & Argument ...................................................................................................................... 9

    I. Plaintiff's Claims Were Properly Brought before this Honorable Court and Are Not Subject to Arbitration under the Contract. ................................................................................... 9

        A. This Honorable Court Has Jurisdiction to Determinate Whether Plaintiff's Claim Fall under the Arbitration Provision. .................................................................................. 9

        B. the Contract's Claims Fall Squarely within the Intellectual Property Carveout within the Arbitration Provision and Related Rules ........................................................................... 12

        C. if this honorable Court determines that the case must be arbitrated then this honorable court Should Stay the Case or, alternatively, dismiss the case without prejudice. ........................ 16

    II. Plaintiff's Complaint Satisfies the Requirements of FED. R. CIV. P. 12(B)(6) and FED. R. CIV. P. 9(B) and none of the claims contained therein Should be Dismissed. .................................. 16

        A. Plaintiff Sufficiently Plead Its Unjust Enrichment claim to Satisfy the Requirements of FED. R. CIV. P. 12(B)(6)..................................................................................................... 17

        B. Plaintiff Sufficiently Plead Its Fraud claim to Satisfy the Requirements of FED. R. CIV. P. 12(B)(6) and FED. R. CIV. P. 9(B). ...................................................................................... 20

Conclusion ............................................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)............................................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)...................................... 16, 17

*Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993).............................. 20, 21

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................. 10

*Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir. 1989) ......................................................... 23

Dioguardi v. Durning, 139 F.2d 774, 775 (2d Cir. 1944) ............................................... 17

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) ......................... 10, 11, 12, 13

*Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985) ......................................... 17

*Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 59 (2d Cir. 2012) ........................ 10

*Kaye v.* Grossman, 202 F.3d 611, 616 (2d Cir. 2000) ..................................................... 18

*London Luxury LLC v. Walmart Inc.*, Docket No. 5:22-cv-05059-TLB (W.D. Ark.)........ 7, 18, 25

*London Luxury LLC v. Walmart Inc.*, Docket No. 7:22-cv-00599-CS (S.D.N.Y.) ............ 7, 18, 25

*London Luxury LLC v. Walmart Inc.*, Index No. 55096/2022 (N.Y. Sup. Ct.) .................. 7, 18, 25

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ..................................................... 13

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000).............................................................................................................. 23

*Pilkington N. Am., Inc. v. Mitsui Ins. Co. of Am.*, 460 F. Supp.3d 481, 493-494 (S.D.N.Y 2020) .............................................................................................................................. 21

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)....................................................... 17

S.D.N.Y Loc. Civ. R. 7.1................................................................................................... 1

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012).................................... 10, 11, 13

*Segui v. Solar Mosaic, LLC*, 802 F. Supp. 3d 545, 559 (S.D.N.Y. 2025) ..................... 12

*Trahan v. Lazar*, 457 F. Supp. 3d 323, 360 (S.D.N.Y. 2020)......................................... 18

*Volt Info. Sciences, Inc. v. Bd. Trustees Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ............................................................................................................................... 12

*Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997)................................... 23

*Wexner v. First Manhattan Co.*, 902 F. 2d 169, 172 (2d Cir. 1990)............................... 23

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................... ii, 1, 15, 16, 18, 19, 21

Fed. R. Civ. P. 9(b) ................................................................................. ii, 1, 19, 21, 22, 23

Individual R. Prac. of Judge Cathy Seibel 2(b)(i)................................................................. 1

S.D.N.Y Loc. Civ. R. 7.1................................................................................................... 1

iii

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND ALTERNATIVELY TO
DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff MNA Gloves SDN BHD ("Plaintiff"), by and through its attorneys, Suri Law

PLLC, and pursuant to S.D.N.Y Loc. Civ. R. 7.1, Individual R. Prac. of Judge Cathy Seibel

2(b)(i), and the Court's Order dated February 20, 2026, files this Response in Opposition to

Defendant London Luxury LLC's Motion to Compel Arbitration and Alternatively to Dismiss for

Failure to State a Claim, and in support thereof states as follows:

**INTRODUCTION**

Defendant is seeking for this Honorable Court to compel arbitration of Plaintiff's claims

or, alternatively, dismiss Plaintiff's claims for unjust enrichment and fraud for failure to status a

claim under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). However, Defendant's entire motion

is predicated on mischaracterizations of the facts in and legal theories underlying Plaintiff's First

Amended Complaint, misapplication of applicable law, and self-serving interpretations of the

contract between the parties. Defendant's interpretations of the written agreement between the

parties directly contradict the plain language of the agreement, which Defendant itself drafted and

which Plaintiff did not negotiate or alter whatsoever. It is clear form the contract's provisions

governing jurisdiction and dispute resolution between the parties that Plaintiff's claims fall

squarely within the intellectual property carveout and are not subject to arbitration. Any

convoluted reading proposed by Defendant which contradicts the plain language of the contract

should be disregarded by this Court. Additionally, Plaintiff has unequivocally satisfied the

requirements of Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), and applicable New York State law

to plead its claims for unjust enrichment and fraud in the First Amended Complaint. Therefore,

1

Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Compel Arbitration and Alternatively to Dismiss for Failure to State a Claim.

## FACTS

Defendant engaged Plaintiff's services to repackage Ansell ® MicroTouch brand nitrile gloves ("Ansell Gloves") under the Sales Purchase Agreement dated April 7, 2021 (the "Contract") so that Defendant could sell the repackaged Ansell Gloves to Walmart Inc. ("Walmart"). *See* Am. Compl. ¶¶ 1, 7, 11, 12. Ansell Limited ("Ansell"), the manufacturer of Ansell Gloves, maintains at least one registered trademark and one patent registered with the United States Patent and Trademark Office (USPTO) for Ansell Gloves. *See* Am. Compl. ¶¶ 93-95, Accordingly, Defendant would have needed a license or some other intellectual property ("IP") rights in Ansell Gloves to sell them or to have Defendant repackage them. *See* Am. Compl. ¶¶ 93-97, 100-101. Plaintiff was unaware that Defendant did not have the requisite IP rights to sell or use Ansell Gloves, so Plaintiff assumed that Defendant simply needed logistical assistance in arranging for Ansell Gloves. *See* Am. Compl. ¶¶ 90-98, 101. Accordingly, Plaintiff attempted to assist Defendant in arranging for Ansell Gloves through its connections in the manufacturing world in Malaysia; however, Defendant was still unable to arrange for Ansell Gloves for Plaintiff to repackage due to Ansell's internal policies and a fundamental lack of rights to use Ansell's IP. *See* Am. Compl. ¶¶ 90, 92, 97, 98-101.

On or about May 27, 2021, a representative from Ansell, the manufacturer of Ansell Gloves, advised both Defendant and Walmart that Ansell did not supply Ansell Gloves to other companies for repackaging or reselling under brand names other than Ansell, thus rendering Plaintiff's performance of the contract impracticable unless Defendant identified a new, acceptable brand of nitrile gloves which Plaintiff could repackage. *See* Am. Compl. ¶¶ 100, 110. Since, neither

2

Defendant nor Walmart were able to obtain the requisite IP rights to sell and repackage Ansell Gloves, a representative of Defendant designated in the Contract, Freda Laas ("Laas"), requested that Plaintiff obtain a different brand of glove to proceed with the Contract. *See* Am. Compl. ¶¶ 10, 13, 69-70, 76, 78, 80, 90-101, 110-14, 131-33. Plaintiff accommodated Defendant's requests and, at Defendant's request, in June 2021, mailed a test shipment of the requested alternative brand of nitrile gloves. Am. Compl. ¶¶ 115-16, 121-26. It was Plaintiff's understanding from correspondences with Defendant that Walmart satisfied with and appreciative for the test shipment of nitrile gloves, even though they were not Ansell Gloves. Am. Compl. ¶¶ 123-124.

Defendant represented to Plaintiff that it wanted to reduce the order minimum under the Contract despite Walmart's satisfaction with the test shipment, and Defendant fraudulently induced Plaintiff to enter into the Second Amendment. Am. Compl. ¶¶ 129-130, 139-141. Defendant led Plaintiff to believe that it did not have a choice but to enter into the Second Amendment if it wished to continue working with Defendant, despite Defendant's preexisting obligations to Plaintiff under the Contract. Am. Compl. ¶¶ 134, 140-141. Unbeknownst to Plaintiff, Defendant intended to set up a nitrile glove manufacturing facility, which would functionally make Defendant a competitor of Plaintiff, and Defendant obtained, albeit by fraud, a letter agreement with Walmart expanding its purchase commitment to Defendant over the span of five (5) years. Am. Compl. ¶¶ 131, 133. Plaintiff could not reasonably have known or otherwise discovered Defendant's plans or its new letter agreement with Walmart. Am. Compl. ¶¶ 133. Defendant's omission gave Plaintiff the impression that but for the Second Amendment, Defendant would not be able to continue working with Plaintiff. Am. Compl. ¶¶ 134, 140-141. Specifically, on June 15, 2021, Laas previously had indicated to Plaintiff that "Walmart was 'preparing to cancel' their purchase order with Defendant." Am. Compl. ¶ 111. The combination of Defendant's

3

failure to perform under the Contract, Laas's representation, and the material omissions by Defendant materially mislead Plaintiff to enter into the Second Amendment under the impression that the entire transaction was in jeopardy. Am. Compl. ¶¶ 111, 131-134, 140-141.

It is clear now that Defendant was attempting to reduce its financial obligations to Plaintiff in writing and created scenarios where it could allege that Plaintiff was the bad actor since Defendant intended to terminate its working arrangement with Plaintiff one way or the other and was looking to avoid the financial consequences of its wrongful conduct. Am. Compl. ¶¶ 134, 148. Plaintiff would not have entered into the Second Amendment if it knew about the increased purchase commitment or if it knew that Defendant intended to become a competitor of Plaintiff and usurp Plaintiff's corporate opportunities under the Contract. Am. Compl. ¶¶ 147-148. Plaintiff's signature on the Second Amendment was induced by way of Defendant's representations and fraudulent omissions. Am. Compl. ¶ 149. In fact, the objective circumstances suggest that Defendant took advantage of Plaintiff's financial position, knowing that Plaintiff had invested significantly in this project from leading a warehouse to fronting costs for boxes of gloves and that Plaintiff was relying on Defendant to begin performing under the Contract or otherwise. Am. Compl. ¶¶ 62, 68, 80, 107-109, 174-179, 232. Since Plaintiff met Laas, and subsequently Defendant through a mutual colleague who worked as a senior private banker at Deutsche Bank, Plaintiff felt a sense of trust in Laas, and consequentially Defendant, especially since Defendant obtained the letter of credit to give Plaintiff a payment guarantee before moving forward. Am. Compl. ¶¶ 11, 55-56, 59, 61, 63, 78, 81, 160, 161. Defendant chose to cancel the letter of credit it had obtained under the Contract, so Plaintiff was ultimately left without any payment security, and Plaintiff's trust in Laas and Defendant was misguided. Am. Compl. ¶ 162.

4

Defendant did not even attempt to perform under the Contract or the Second Amendment until September of 2021 when Defendant forwarded its first purchase order in connection with the Contract or Second Amendment. Am. Compl. ¶ 169. Even then, Defendant requested that Plaintiff incur costs on behalf of Defendant to obtain the requisite gloves and boxes for Defendant's order. Am. Compl. ¶ 170. Defendant then threatened to cancel the outstanding letter of credit under the Second Amendment if Plaintiff did not perform, despite Defendant's countless breaches of the Contract at this point, and Defendant said that payment would conditional upon Plaintiff making the shipment of gloves contrary to both the Contract and the Second Amendment. Am. Compl. ¶¶ 173-175. To further string Plaintiff along, Laas made further representations that funds from Defendant were incoming and that payments would be made biweekly moving forward. Am. Compl. ¶ 176. Plaintiff obtained goods on credit, incurred significant costs, and invested significant labor in packaging and re-packaging the order for Defendant based on Defendant's varying instructions in an attempt to preserve its working relationship with Defendant. Am. Compl. ¶¶ 178-187.

Moreover, Defendant used the Second Amendment to impose additional obligations on Plaintiff which were not present in the Contract: the Second Amendment required additional compliance, audit, and social audits which the parties knew Plaintiff could not pass because it was a repackaging facility not a manufacturer. Am. Compl. ¶¶ 150, 153, 220-225, 228, 238-239. Plaintiff did make good faith efforts to assist Defendant with complying with and to participate in social audits for Walmart at Defendant's request, though Plaintiff was only contractually "responsible for assisting Defendant in conducting inspections of the manufacturing facilities from which the Gloves were sourced" under the Contract. Am. Compl. ¶¶ 218-220, 222-223, 229-231, 239-240. Plaintiff incurred significant expenses and spent significant time trying to satisfy the

5

social audit requirements, again as a gesture of good faith since Defendant continued to reassure Plaintiff of their working relationship. Am. Compl. ¶ 179-187, 190, 231-235. Although Defendant urged Plaintiff to continue attempting to clear the social audits Defendant was required to pass under its deal with Walmart, on or about November 11, 2021, Laas eventually relented and advised Plaintiff to make the initial shipment to Defendant. Am. Compl. ¶¶ 219, 235-237.

Unbeknownst to Plaintiff, Walmart notified Defendant that it intended to cancel its contract with Defendant on the same day. Am. Compl. ¶ 197. Laas generally alluded to issues between Defendant and Walmart; however, at no time did any representative of Defendant advise Plaintiff of any disputes that rose to the level of contract termination. Am. Compl. ¶ 196-198. It is clear in retrospect that Defendant was attempting to create scenarios where it could allege that Plaintiff was the breaching party despite Defendant's total non-performance under and repeated breaches of the Contract. Am. Compl. ¶¶ 242-244.

After all of this, the companies who advanced the gloves to Plaintiff on credit were coming to collect on the debt Plaintiff accrued on Defendant's behalf. Am. Compl. ¶¶ 199-200. Plaintiff's only option to clear the debt was to collect on the letter of credit; however, Plaintiff would only be able to do so after mailing the first shipment of repackaged gloves under the Contract. *Id.* Defendant failed to arrange for shipping containers or to otherwise make logistical arrangements for shipping, so Plaintiff ultimately was left with no choice but to ship the first shipment under the Contract at its own expense and issue Defendant a related invoice. Am. Compl. ¶¶ 200-202. Plaintiff was unable to collect on the letter of credit drawn under either the Contract or the Second Amendment. Am. Compl. ¶¶ 164-166, 203, 208.

Plaintiff later learned that, on January 5, 2022, Defendant filed a suit against Walmart for breach of contract, among other claims, in the New York State Supreme Court for the County of

6

Westchester; the action was later removed to federal court and was ultimately litigated in the Western District of Arkansas. *See* Am. Compl. ¶¶ 268-270; *see also London Luxury LLC v. Walmart Inc.*, Index No. 55096/2022 (N.Y. Sup. Ct.); *see also London Luxury LLC v. Walmart Inc.*, Docket No. 5:22-cv-05059-TLB (W.D. Ark.); *see also London Luxury LLC v. Walmart Inc.*, Docket No. 7:22-cv-00599-CS (S.D.N.Y.) On or about April 10, 2024, an Arkansas Federal jury awarded One Hundred One Million Two Hundred Eighteen Thousand Six Hundred Eighty United States Dollars ($101,218,680.00 USD) to Defendant and Three Hundred Fifty Thousand United States Dollars ($350,000.00) to Walmart after a trial over Defendant's and Walmart's dispute. *See* Am. Compl. ¶¶ 269; *see also London Luxury LLC v. Walmart Inc.*, Docket No. 5:22-cv-05059-TLB (W.D. Ark.). In its Complaint against Walmart, Defendant claims that it was entitled to damages for "clogged ports and factories with the unsent shipments of gloves" and vehemently defended the quality of the gloves produced to Walmart and the factories in which they were manufactured. *See London Luxury LLC v. Walmart Inc.*, Docket No. 5:22-cv-05059-TLB (W.D. Ark.), Doc. 140 ¶ 1, 55, 66-69, 71-74, 80-81. Ironically, in litigation against Walmart, Defendant argued against the majority of its rationale for terminating its contractual agreement with Plaintiff cited in the termination letter it sent to Plaintiff on January 31, 2022. Am. Compl. Ex. 4, at 1.

After Defendant's claim against Walmart were litigated, this action was brought forth, and the proper venue and mode of resolving this dispute came at issue before this Court. Section 8.1 of "ARTICLE 8: JURISDICTION AND DISPUTE RESOLUTION" of the Contract specifies that

> [t]his Contract shall be governed by and construed in accordance with the laws of Singapore, excepting for the provisions of paragraphs 8.3 under this Article 8. Accordingly, in relation to any legal action or proceedings arising out of or in connection with this Contract, each of the Parties hereby irremovably submits arbitration in Singapore as set forth more specifically in Section 8.2 below.

Am. Compl. Ex. 1., at 10. However, it also includes an arbitration provision in Section 8.2 which

provides, in relevant part

> [w]ithout limiting the applicability and effects of the provisions of paragraph 8.3 of this Article 8, any dispute or Action arising out of or in connection with this Contract, including any questions regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore accordance with the Arbitration Rules od the Singapore Internation arbitration[sic] Center…

*Id.* However, as referenced in Sections 8.1 and 8.2 of the Contract, the Contract provides for an

exception in the event of disputed intellectual property rights as follows:

> [w]ith respect to any dispute or Actions in relation to issues in controversy regarding any Intellectual Property rights of Party B or any of its Customers, this Contract's applicable provisions thereto shall subject to interpretation and interpretation in accordance with the laws of, United States of America. Any dispute or Action arising out of any question regarding the formation, performance, breach, termination, validity of any provision in connection with such Intellectual Property rights of this Agreement, shall be firstly resolved by friendly negotiation by the Parties in good faith. In case either party is unwilling to settle the dispute through negotiation or if both Parties fail to reach any agreement within (30) days after the negotiation begins, either Party may submit such dispute to the competent court for a settlement. All matters arising out of or relating to such disputed Intellectual Property rights contemplated by this Contract, are governed by, and construed in accordance with, the Laws of the State of New York, United States of America, without regard to the conflict of laws provision thereof. Each Party irrevocably and unconditionally agrees that it shall not commence any Action relative to disputed Intellectual Property rights of any kind whatsoever against the other Party in any way arising from or relating to this Contract, including all exhibits, schedules, attachments and appendices attached hereto and thereto, and all contemplated transactions, including contract, equity, tort, fraud, and statutory claims, in any forum other than the United States, District Court for the Southern District of New York or, if such court does not have subject-matter jurisdiction, the courts of the State of New York sitting in New York County, and any appellate court from any thereof. Each Party agrees that a final judgment in any Action involving disputed Intellectual Property is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

*Id.* l. Under Section 3.1.23 of the Contract,

> "Intellectual Property" means all intellectual property rights that was developed and/or owned by either Party prior to and independently of its arrangements with the other Party under this Contract throughout the word, including all Malaysia, the USA and other foreign (i) patents, patent applications, invention disclosures, and

8

all related continuations, continuations-in-part, divisionals, provisionals, renewals, reissues, re-examinations, additions, extensions (including all supplementary protection certificates) ("Patent Rights"), (ii) trademarks, service marks, names, corporate names, trade names, domain names, logos, slogans, trade dress, design rights, and other similar designations of source or origin, together with the goodwill symbolized by any of the foregoing, (iii) copyrights and copyrightable subject matter ("Copyrights"), (iv) rights in computer programs (whether in source code, object code, or other form), algorithms, databases, compilations and data, technology supporting the foregoing, and all documentations, including user manuals and training materials, related to any of the foregoing, (v) trade secrets and all other Confidential Information, ideas, know-how, inventions, proprietary processes, formulae, models, and methodologies, and (vi) all applications and registrations for the foregoing[sic]

*Id.* at 4. Under Section 3.1.30 of the Contract, "Party B's Intellectual Property" or "Party B's Property" is defined as

…any rights to Intellectual Property that was owned by Party B prior and independently of its dealings with Party A under this Contract; and includes Party B's Packaging Material and all data, writings and other property in any form whatsoever, which is provided to Party A by or on behalf of Party B, and which was owned or controlled by Party B and/or its respective Affiliates pursuant to this Contract or any other Ancillary Agreement prior to being provided to or used by Party A hereunder.

*Id.* at 5.

Plaintiff has suffered significant financial, reputational, and equitable damages as a result of Defendant's unlawful and fraudulent conduct, and now Plaintiff is attempting to avail itself of legal recourse in the form designated by the Contract between the parties.

## LAW & ARGUMENT

**I. PLAINTIFF'S CLAIMS WERE PROPERLY BROUGHT BEFORE THIS HONORABLE COURT AND ARE NOT SUBJECT TO ARBITRATION UNDER THE CONTRACT.**

**A. THIS HONORABLE COURT HAS JURISDICTION TO DETERMINATE WHETHER PLAINTIFF'S CLAIM FALL UNDER THE ARBITRATION PROVISION.**

9

This Honorable Court has jurisdiction to decide whether an issue is arbitrable or not under the Contract.

The Second Circuit has clearly held that if an arbitration clause itself is at issue, that goes to the making of the agreement to arbitrate, and a federal court may properly adjudicate the matter. *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 59 (2d Cir. 2012) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)). An arbitrator "has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate[, so] the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Absent a clear agreement between the parties to submit the question of arbitrability of a dispute an arbitrator, the court should decide the question using "ordinary state-law principles that govern" contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) (citation omitted). If a contract is silent about whether the matter of arbitrability should be decided by a court or arbitrator, then the court should infer that there is no such agreement. *Id.* at 944-945 (explaining that "[i]n this manner the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption.) (citations omitted).

Here, since the applicability of an arbitration clause is at issue, this Court properly has jurisdiction over the issue absent an agreement between the parties to arbitrate the question of arbitrability. There is nothing in the contract to indicate that the parties specifically agreed for the issue of arbitrability to be brought before an arbitrator, only that, with the exception of the

10

intellectual property carveout in Section 8.3, any "dispute or Action arising out of or in connection with this Contract, including any questions regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore accordance with the Arbitration Rules of the Singapore Internation arbitration[sic] Center. Again, there is nothing specific in the Contract to suggest that an arbitrator has the authority to arbitrate the arbitration clause itself specifically. In fact, the Contract specifically carves "any dispute or Actions in relation to issue in controversy regarding any Intellectual Property rights of Party B or any of its Customers" in which case laws of the United States shall apply."

Since the Contract is silent and lacks the specific language required for this issue to come in the purview of an arbitrator as opposed to a District Court Judge, this Court "should decide" the question. *See Schnabel*, 697 F.3d at 118; *see also First Options of Chi., Inc.*, 514 U.S. at 943-45. The question of whether a particular merits-related dispute is arbitrable within the scope of a valid arbitration is specifically within the District Court's jurisdiction, as is the case here. *See First Options of Chi., Inc.*, 514 U.S. at 944-45. Not only is there nothing to indicate that the issue of arbitrability is arbitrable itself, but also the Contract contains an explicit carveout for claims of the same nature as Plaintiff has brought forth in this matter. Since Defendant disputes whether or not Plaintiff's claims are subject to mandatory arbitration, the particular merits-related dispute is a matter for the District Court to decide. *See Id.*

Defendant attempts to formulaically claim "reference" to international arbitration rules sufficient to establish that the question of arbitrability should be arbitrated; however, (1) Defendant does not dispute that personal jurisdiction is otherwise proper in this Court, and (2) Defendant fails to point to any particular provision in the agreement between the parties which unequivocally clarifies that the parties agreed to submit the question of arbitrability to an arbitrator, likely since

11

no such language or agreement exists. Defendant is attempting to force Plaintiff into arbitrating issues clearly outside of the scope of the parties' arbitration agreement in the Contract. There is also nothing to suggest that the contract is subject to the SIAC or FAA rules regarding arbitration, outside of instances which fall within the scope of the arbitration clause of the Contract. In fact, the Contract is exclusively subject to interpretation under the laws of the United States of America to the extent that a party's claim come outside of the arbitration agreement between the parties.

Therefore, this Court has jurisdiction to decide the issue of arbitrability of Plaintiff's claims based on the Contract since the Contract does not contain any agreements to submit questions of arbitrability to an arbitrator. Thus, the only issue related to arbitration for this Court to consider is whether Plaintiff's claims fall within the scope of the intellectual property carveout to the arbitration clause in the Contract.

### B. THE CONTRACT'S CLAIMS FALL SQUARELY WITHIN THE INTELLECTUAL PROPERTY CARVEOUT WITHIN THE ARBITRATION PROVISION AND RELATED RULES

This Honorable Court should dismiss Defendant's Motion to Compel Arbitration since Plaintiff's claims are related to intellectual property and thus fall under the carveout of claims which Plaintiff did not consent to arbitrating under the Contract.

A valid arbitration agreement requires a "mutual manifestation of assent with respect to all material terms" *Segui v. Solar Mosaic, LLC*, 802 F. Supp. 3d 545, 559 (S.D.N.Y. 2025) (internal citations omitted). The Supreme Court held that "[a]rbitration under the Act is a matter of consent, not coercion" and that parties may "limit by contract the issues which they will arbitrate." *Volt Info. Sciences, Inc. v. Bd. Trustees Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (citation omitted).

The threshold issue for "any court considering a motion to compel arbitration is [] whether the parties have indeed agreed to arbitrate." *Schnabel*, 697 F.3d at 118. A court may only compel a party to arbitrate "those issues it specifically has agreed to submit to arbitration". *First Options of Chi., Inc.*, 514 U.S. at 945 (citations omitted). Where it is clear that an arbitration clause has not included an issue to be arbitrated, then that issue shall not be deemed arbitrable. *Id.* at 945 (citation omitted). Parties can only be forced to arbitrate those issued that the party has specifically agreed to submit to arbitration. *Id.*

Despite the FAA's policy favoring arbitration, it "does not authorize federal courts to invent special, arbitration-preferring procedural rules," rather the Supreme Court clarified that the policy is to make "'arbitration agreements as enforceable as other contracts, but nor more so.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citations omitted); *see also Schnabel*, 697 F.3d at 118 (clarifying that "this policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.") (citations omitted).

The parties agree that the Contract was a legally binding agreement between the parties, so Plaintiff does not dispute the validity of the Contract or, consequentially, the arbitration provision contained therein. However, under the Contract, Plaintiff only consent to arbitrate issues which were outside of the Contract's Section 8.3 carveout, limiting the issues which shall be arbitrated and defining the issues which must be brought before this Honorable Court. The Court must still look at whether there is an agreement to arbitrate, but the Court must specifically consider whether the issues before the Court are those which the parties have agreed to arbitrate or not.

Here, it is obvious from the plain language of Article 8 that Section 8.3 is a broad exception and carveout to the arbitration clause. Specifically, Section 8.3 provides that

> any dispute or Actions in relation to issues in controversy regarding any Intellectual Property rights of Party B or any of its Customers, this Contract's applicable

13

provisions thereto shall subject to interpretation and interpretation in accordance with the laws of, United States of America. Any dispute or Action arising out of any question regarding the formation, performance, breach, termination, validity of any provision in connection with such Intellectual Property rights of this Agreement, shall be firstly resolved by friendly negotiation by the Parties in good faith. In case either party is unwilling to settle the dispute through negotiation or if both Parties fail to reach any agreement within (30) days after the negotiation begins, either Party may submit such dispute to the competent court for a settlement.

Am. Compl. Ex. 2, at 10. This carveout, by its text is not limited to intellectual property claims rooted in intellectual property law, but rather it includes "[a]ny dispute or Action arising out of any question regarding the formation, performance, breach, termination, validity of any provision in connection with such Intellectual Property rights of this Agreement." *Id.*

Defendant does not contest that Plaintiff attempted to resolve this matter informally in good faith or that Plaintiff attempted to settle the dispute with thirty (30) days of initiating the settlement negotiations with Defendant, by sending a letter to Defendant's counsel including

Here, Plaintiff's claims are clearly the kind contemplated by the arbitration provision in the Contract which Defendant drafted. The carveout broadly includes effectively any dispute "regarding" or "in connection with" intellectual property rights in connection with the Contract. If Defendant or Walmart, Defendant's customer, had the requisite intellectual property rights to the patent(s) and trademark(s) maintained by Ansell with respect to Ansell gloves, then the brand of glove repackaged by Plaintiff would never have been at issue between the parties.

Defendant misguidedly claims that Plaintiff's characterization of claim is a way for Plaintiff to evade the arbitration clause; however, Plaintiff is trying to honor the plain language of the Contract between the parties, and Plaintiff's claims are clearly outside of the issues to be arbitrated under the arbitration provision in the Contract. The issue of whether Plaintiff could ever had performed under the Contract, since Defendant cited Plaintiff's inability to provide Ansell

14

Gloves as a basis for terminating the Contract, is central to Plaintiff's claims against Defendant. Moreover. Defendant's claims, based on the language of the Contract need only be "regarding" or "in connection with" intellectual property rights of Defendant. While Defendant focuses largely on whether or not third-party intellectual property rights are contemplated by the Contract, Defendant misses that the lack of Defendant's rights in the intellectual property required for the acquisition and repackaging of Ansell gloves is integral to Plaintiff's claims. The existence, or lack thereof, of Defendant's rights in the intellectual property required for Plaintiff to perform the most material part of the terms in the Contract for Defendant is, again, extremely important and central to Plaintiff's claims.

Even so, again, Defendant erroneously asserts that "at most" Plaintiff's allegations concern only Ansell's intellectual property rights multiple times throughout its argument; however, the existence of Ansell's rights is as integral to Plaintiff's claim as the non-existence of Defendant's intellectual property rights. Defendant so much as cited Plaintiff's inability to use the Ansell brand gloves in its termination letter, yet that was caused by Defendant's failure to acquire intellectual property rights to use and resell said gloves. Plaintiff Complaint makes reference numerous times to Defendant's intellectual property rights, or lack thereof, because they are so important to Plaintiff's claims. *See* Am. Compl. ¶ 10, 12, 26, 28, 69-70, 83, 93, 97, 101, 110, 114, 262.

Defendant also baseless claims that Plaintiff's claims cannot be within the scope of the intellectual property carveout because they are not specifically intellectual property claims, such as copyright infringement, but this interpretation directly contradicts the plain text of the agreement between the parties which, again, references "dispute or Action arising out of any question regarding the formation, performance, breach, termination, validity of any provision in connection with such Intellectual Property rights of this Agreement". While Plaintiff

15

acknowledges that the exception is drafted extremely broadly, Defendant drafted the Contract, and Plaintiff is simply asking for a plain text reading of the provision and the right to seek legal recourse for the significant harm and damages Defendant has caused Plaintiff in this Court, which has been designated the exclusive jurisdiction for the type of claims which Plaintiff has brought before this Honorable Court.

Therefore, this Honorable Court should dismiss Defendant's Motion to Compel Arbitration and allow Plaintiff's claim to proceed on the merits before this Honorable Court since Plaintiff's claims clearly fall within the carveout of claims which Plaintiff did not consent to arbitrating.

### C. IF THIS HONORABLE COURT DETERMINES THAT THE CASE MUST BE ARBITRATED THEN THIS HONORABLE COURT SHOULD STAY THE CASE OR, ALTERNATIVELY, DISMISS THE CASE WITHOUT PREJUDICE.

To the extent that this Honorable Court determines that this case should be submitted to an arbitrator for any reason, Plaintiff hereby respectfully requests that this case be stayed or that the case be dismissed without prejudice. Alternatively, Plaintiff respectfully requests that this Honorable Court grant leave for Plaintiff to file a motion requesting that this case be stayed or that the case be dismissed without prejudice in the event that this Honorable submits this case to an arbitrator for any reason.

### II. PLAINTIFF'S COMPLAINT SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 12(B)(6) AND FED. R. CIV. P.  9(B) AND NONE OF THE CLAIMS CONTAINED THEREIN SHOULD BE DISMISSED.

A complaint must contain enough facts to state a claim for relief that is plausible on the complaint's face to satisfy the pleading requirement and withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6); this only requires "'a short and plain statement of the claim showing that the pleader is entitled to relief'…to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)

16

(citations omitted); *Dioguardi v. Durning*, 139 F.2d 774, 775 (2d Cir. 1944) (holding plaintiffs only need to disclose their claims, regardless of "however inartistically" they may be stated in the complaint). Plaintiff must only provide facts to establish the grounds on which he is entitled to relief. *Id.* at 555 (citations omitted). The factual allegations in a complaint must "raise a right to relief above the speculative level", and "raise a reasonable expectation that discovery with reveal evidence of [the claim]." *Id.* at 555-56 (citations omitted).

The methodology of applying the standard of Fed. R. Civ. P. 12(b)(6) motions is to accept the plaintiff's allegations in the complaint as true, disregard conclusory legal statements, make reasonable inferences in favor of the plaintiff that the defendant is liable for the "alleged misconduct," then evaluate the plausibility of the plaintiff's claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citations omitted). Courts may consider any written instruments, exhibits, statements, or documents attached to or incorporated by reference in the complaint. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted). Dismissals should not be granted "'based on a judge's disbelief of a complaint's'" facts. *Twombly*, 550 U.S. at 556 (citations omitted).

Plaintiff plead plausible claims for both Plaintiff's claim for unjust enrichment and fraud in the First Amended Complaint to satisfy the requirements of Fed. R. Civ. P. 12(b)(6).

## A. PLAINTIFF SUFFICIENTLY PLEAD ITS UNJUST ENRICHMENT CLAIM TO SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 12(B)(6).

Plaintiff pled the requisite facts in the First Amended Complaint to satisfy the requirements of FED. R. CIV. P. 12(b)(6) and New York State law.

A claim for unjust enrichment under New York law requires the plaintiff to allege "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution.…The 'essence' of such a claim 'is that one party has received money or a

17

benefit at the expense of another.'" *Kaye v.* Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citations omitted). "A plaintiff may plead unjust enrichment in the alternative to breach of contract where there is a "bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue." *Trahan v. Lazar*, 457 F. Supp. 3d 323, 360 (S.D.N.Y. 2020) (citation omitted).

First, the Defendant benefitted from the appearance of being in contract with Plaintiff under the Second Amendment and from Plaintiff's agreement to advance costs and obtain goods on credit to assist Defendant with satisfying its obligations to Walmart. As a result of expenses Plaintiff incurred detailed in the next paragraph, Defendant was able to sue Walmart and recover One Hundred One Million Two Hundred Eighteen Thousand Six Hundred Eighty United States Dollars ($101,218,680.00 USD) from a federal jury. Am. Compl. ¶ 269. Plaintiff remained ready, willing, and able to perform under the Contract and incurred all of the expenses associated with that. Am. Compl. ¶¶ 17, 53, 68, 102-108, 159, 171-75, 177, 179 217, 295. Had Plaintiff breached its obligations under the Contract or had Plaintiff otherwise not tried to accommodate Defendant's requests for help with satisfying its obligations to Walmart, one can reasonably infer that Defendant would likely not have been able to prevail in a claim against Walmart since Defendant was, for all intents and purposes, a middleman arranging for the gloves to be repacked under Defendant's branding. *See Id.*; *see London Luxury LLC v. Walmart Inc.*, Index No. 55096/2022 (N.Y. Sup. Ct.); *see also London Luxury LLC v. Walmart Inc.*, Docket No. 5:22-cv-05059-TLB (W.D. Ark.); *see also London Luxury LLC v. Walmart Inc.*, Docket No. 7:22-cv-00599-CS (S.D.N.Y.).

Second, Plaintiff incurred significant expense because of Defendant's wrongful conduct. Plaintiff alleged obtained gloves for the first shipment on credit, in connection with which Plaintiff incurred approximately Five Million United States Dollars ($5,000,000.00 USD) of debt, despite

18

the parties' agreement that Defendant bore the responsibility for advancing costs for the gloves lay. Am. Compl. ¶¶ 68, 171-75, 177, 179. Based on repeated reassurances from Defendant that payment was forthcoming, Plaintiff also incurred the expense of entering into a two-year lease for the warehouse necessary to house the gloves which Plaintiff anticipating needing to store under the Contract. Am. Compl. ¶¶ 102-108. This warehouse was used to store Defendant's "Dr. Smart brand boxes" which it requested Plaintiff have printed and store for the test shipment and the boxes necessary for the purchase order issued by Defendant in September 2021. Am. Compl. ¶¶ 102, 110, 115, 133, 169, 171, 177, 180. Defendant failed to advance any amount for the gloves necessary for the September 2021 purchase order; in fact, contrary to the parties' agreement, Defendant threatened Plaintiff and wrongfully alleged that Plaintiff would be in default of the Contract if Plaintiff did not obtain the gloves necessary for repackaging at its own expense. Am. Compl. ¶¶ 171, 173-77, 179. Further, Plaintiff incurred costs not only packaging but repackaging the gloves into different configurations with different stickers for the first shipment at Defendant's insistence; Plaintiff spent approximately Two Million Five Hundred Thousand United States Dollars ($2,500,000.00 USD) re-preparing the boxes pursuant to Defendant's specifications. Am. Compl. ¶¶ 186-187. None of these expenses were legitimately incurred in connection with any legally binding contract or other agreement between the parties, as is repeatedly alleged throughout the First Amended Complaint. Am. Compl. ¶¶ 68, 102-108, 171-75, 177, 179.

Third, equity and good conscience require that Defendant pay restitution to Plaintiff for all of the expenses incurred and damages suffered as a result of Defendant's wrongful conduct. Plaintiff incurred all of the aforementioned expenses in reliance on Defendant's representations about the future of the working relationship between the parties. Am. Compl. ¶¶ 299-301. Defendant never compensated Plaintiff for the debt it incurred on Defendant's behalf let alone the

19

other expenses that Plaintiff incurred as a result of Defendant's unlawful conduct. Am. Compl. ¶¶ 68, 102-108, 171-75, 177, 179, 210, 216-217. Based on these aforementioned facts and the elements for unjust enrichment pled in the Complaint, the Complaint sufficiently alleges that Defendant benefitted at Plaintiff's expense and that equity and good conscience require restitution.

Further, Plaintiff pled unjust enrichment in the alternative, since the above referenced items are not covered by the Contract and since Plaintiff contends that the Second Amendment is not a legally binding contract, so any associated damages would not be covered by Plaintiff's breach of contract claim. To the extent that any such damages are covered by a fraud claim, Plaintiff's claim for unjust enrichment is in the alternative to Plaintiff's fraud claim. *See* Am. Compl. ¶¶ 68, 102-8, 129, 131-37, 139-49, 154-58, 171-75, 177, 179, 210, 216-17.

Therefore, the facts pled in Plaintiff's First Amended Complaint satisfy the requirements of Fed. R. Civ. P. 12(b)(6) for Plaintiff's unjust enrichment claim, Plaintiff's unjust enrichment claim should not be dismissed and should proceed on the merits; further, Plaintiff's unjust enrichment claim is not duplicative of Plaintiff's other claims.

### B. PLAINTIFF SUFFICIENTLY PLEAD ITS FRAUD CLAIM TO SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 12(B)(6) AND FED. R. CIV. P. 9(B).

Plaintiff has sufficiently pled a claim for fraud in the First Amended Complaint. Under New York law, a claim for fraudulent concealment requires that the plaintiff prove the following elements: "(1) that the defendant failed to meet its duty to disclose, but also (2) that the defendant had an intent to defraud or *scienter,* (3) there was reliance on the part of the plaintiff, and (4) damages." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993) (citation omitted). A party has a duty to speak in business transactions:

> first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot

20

give only half of the truth…; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."

*Brass*, 987 F.2d at 150 (citations omitted); *see also Pilkington N. Am., Inc. v. Mitsui Ins. Co. of Am.*, 460 F. Supp.3d 481, 493-494 (S.D.N.Y 2020) (citation omitted).

First, Defendant failed to meet its duty to disclose since it had superior knowledge to Plaintiff which was not readily available and since Defendant knew that Plaintiff was acting on the basis of that mistaken knowledge. Defendant failed to disclose to Plaintiff that it intended to set up a competing business and that it had a contract for increased order volume with Walmart. Am. Compl. ¶¶ 133-35. There was no plausible way that Plaintiff could have known about Defendant's internal business plan, nor about the larger purchase commitment from Walmart. Am. Compl. ¶¶ 133, 137. Contrastingly, the objective circumstances suggest that Defendant took advantage of Plaintiff's financial position, knowing that Plaintiff had invested significantly in this project from leading a warehouse to fronting costs for boxes of gloves and that Plaintiff was relying on Defendant to begin performing under the Contract or otherwise. Am. Compl. ¶¶ 62, 68, 80, 107-109, 174-179, 232. Defendant's conduct and prior representations combined with Defendant's omissions were extremely misleading and rendered Plaintiff unable to make an informed decision about whether or not Plaintiff wished to enter into the Second Amendment.

Second, the facts and circumstances suggest that Defendant had the intent to defraud Plaintiff. In addition to the above-referenced circumstances surrounding Defendant's omissions, Defendant repeatedly attempted to interfere in Plaintiff's ability to perform after obtaining Plaintiff's signature on the Second Amendment. *See* Am. Compl. ¶¶ 17, 20, 53, 62, 68, 80, 107-109, 159, 174-179, 232. Defendant started mischaracterizing the parties' agreement to Plaintiff and started using money as a tool to bully Plaintiff into performing as it suited Defendant making

21

baseless promises that the money would come to pay Plaintiff and that Defendant would pay Plaintiff after the initial shipment was sent out. *See* Am. Compl. ¶¶ 171, 173-176. Plaintiff even specifically pled that [d]efendant made these misrepresentations or omissions with the intent to induce Plaintiff's reliance upon it." *See* Am. Compl. ¶ 307. It is clear in retrospect that Defendant was attempting to reduce its financial obligations to Plaintiff in writing and created scenarios where it could allege that Plaintiff was the bad actor since Defendant intended to terminate its working arrangement with Plaintiff one way or the other and was looking to avoid the financial consequences of its wrongful conduct. Am. Compl. ¶¶ 134, 148.

Third, Plaintiff relief upon Defendant's omission. Per the First Amended Complaint, Plaintiff would not have entered into the Second Amendment if it had known about the increased purchase commitment from Walmart or that Defendant intended usurp Plaintiff's corporate opportunities under the Contract after setting up its own nitrile glove manufacturing facility. Am. Compl. ¶¶ 147-49. As described in detail above, Plaintiff incurred significant expenses and took on debt as a result of Defendant's fraudulent omissions and insistence that it would pay Plaintiff.

Fourth, Plaintiff suffered damages as a result of Defendant's omission. As described above, Plaintiff spent hundreds of thousands of dollars and incurred millions of dollars of debt as a result of Defendant's omission.

Therefore, the facts pled in Plaintiff's First Amended Complaint satisfy the requirements of FED. R. CIV. P. 12(b)(6) and New York State law for Plaintiff's fraud claim.

Additionally, the facts Plaintiff pled in the First Amended Complaint satisfy the requirements of FED. R. CIV. P. 9(b). Under FED. R. CIV. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Generally, this

means that a plaintiff must "allege '(1) the specific statement or omission; (2) the aspect of the statement or omission that makes it false or misleading; (3) when the statement was made; (4) where the statement was made; and (5) which defendant was responsible for the statement or omission.'" *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (citation omitted). To allege fraudulent omission or concealment with particularity, a plaintiff "is unable to specify the time and place because no act occurred, [so] the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Odyssey Re (London) Ltd*, 85 F. Supp. 2d at 293 (citation omitted); *see also Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997). Although fraud must be plead with particularity, "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F. 2d 169, 172 (2d Cir. 1990) (citation omitted). Further, similarly to the application of FED. R. CIV. P. 12(b)(6) "this Court must" read "the Complaint generously and draw[] all inferences in favor of the pleader…when deciding a Rule 9(b) motion. *Weaver*, 172 F.R.D. at 101; *see also Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir. 1989) (citation omitted).

First, when Defendant induced Plaintiff's signature on the Second Amendment, Defendant failed to disclose to Plaintiff that it intended to set up a competing business and that it had a contract for increased order volume with Walmart. In *Wexner*, the Second Circuit Court of Appeals found that the requirements of FED. R. CIV. P. 9(b) were not met because plaintiff generally alleged there was a "corrupt bargain" but failed to specify any definite terms thereof. 902 F. 2d at 172-173. Dissimilarly here, Plaintiff pled the details of the material information omitted by Defendant, specifically that Defendant intended to fraudulently induce Plaintiff to enter into the Second

23

Amendment and that Defendant purposefully did not notify Plaintiff of Defendant's plan to open a nitrile glove manufacturing facility or of the increased order commitment from Walmart. Am. Compl. ¶¶ 133-35. As described above, had Plaintiff been aware of true state of Defendant and Walmart's contractual relationship and/or of Defendant's plans to take Plaintiff's corporate opportunity, Plaintiff would like have never entered into the Second Amendment, let alone order goods on credit and incur significant debt.

Second, Defendant was responsible for the failure to disclose the aforementioned omitted information; however, specifically, the key individuals identified in the Contract, were responsible for the failure to disclose, especially Laas who was Plaintiff's primary point of contact. Am. Compl. ¶¶ 63, 133-38, 304-16.

Third, Defendant's omission combined with Defendant's prior statements that its working arrangement with Walmart was in jeopardy and that it intended to continue doing business with Plaintiff long term led Plaintiff to be reasonably misled about the state of the transactions before enter into the Second Amendment. *See* Am. Compl. ¶¶ 17, 20, 53, 62, 68, 80, 107-109, 159, 174-179, 232. As described above, the circumstances surrounding Defendant's omissions made them significantly more misleading. *Id.*

Finally, by inducing Defendant to enter into the Second Amendment, Defendant obtained benefits, as described above in detail, such as being in a position where it was not in breach of its agreement with Walmart because Plaintiff was ready, willing, and able to perform under the Contract. Am. Compl. ¶¶ 17, 53, 68, 102-108, 159, 171-75, 177, 179 217, 295. Defendant was likely able to prevail in its claim against Walmart because Plaintiff assisted Defendant, to the extent possible, with satisfying Defendant's obligations to Walmart, such as the social audits. *See id.*; Am. Compl. ¶¶ 218-20, 222-27, 231-35, 238-40; *see London Luxury LLC v. Walmart Inc.*, Index

24

No. 55096/2022 (N.Y. Sup. Ct.); *see also London Luxury LLC v. Walmart Inc.*, Docket No. 5:22-cv-05059-TLB (W.D. Ark.); *see also London Luxury LLC v. Walmart Inc.*, Docket No. 7:22-cv-00599-CS (S.D.N.Y.).

Therefore, the facts pled in Plaintiff's First Amended Complaint satisfy the requirements of Fed. R. Civ. P. 9(b) for Plaintiff's fraud claim. Further, Plaintiff's fraud claim should not be dismissed and should proceed on the merits.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Alternatively to Dismiss for Failure to State a Claim should be denied in its entirety.

**Respectfully Submitted,**

Dated: March 30, 2026

**/s/ Sohela Suri_____**
Sohela Suri
Suri Law PLLC
626 RexCorp Plaza, Suite 606
Uniondale, New York 11556
Ph.: 212.616.8488
Fax: 212.616.8480
E.: sohela@surilawpllc.com
*Counsel for Plaintiff*

25

## WORD COUNT CERTIFICATION

Pursuant to S.D.N.Y Loc. Civ. Rule 7.1 and Individual R. Prac. Judge Cathy Seibel 2(b)(i), I hereby certify that, according to the Microsoft Word count function, the total number of words in this Response in Opposition to Defendant's Motion to Compel Arbitration and Alternatively to Dismiss for Failure to State a Claim is Eight Thousand and Seven (8,007) words.

**Respectfully Submitted,**

Dated: March 30, 2026

**/s/ Sohela Suri**
Sohela Suri
Suri Law PLLC
626 RexCorp Plaza, Suite 606
Uniondale, New York 11556
Ph.: 212.616.8488
Fax: 212.616.8480
E.: sohela@surilawpllc.com
*Counsel for Plaintiff*