UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MNA GLOVES SDN BHD, a Malaysia Private Limited Company,<br><br>    Plaintiff,<br><br>v.<br><br>LONDON LUXURY LLC, a New York Limited Liability Company,<br><br>    Defendant. | CASE NO. 7:25-cv-07619-CS |

## LONDON LUXURY LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND ALTERNATIVELY TO DISMISS FOR FAILURE TO STATE A CLAIM

**COZEN O'CONNOR**

Dated:  April 24, 2026

By:  */s/Jeffrey M. Monhait*
        Jeffrey M. Monhait
        Emma Scully
        3WTC, 175 Greenwich Street, 55th Floor
        New York, New York 10007
        Tel: 215-665-2084
             212-453-3875
        Email:  jmonhait@cozen.com
                escully@cozen.com

        *Attorneys for Defendant*
        *London Luxury LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.    MNA CANNOT AVOID BINDING ARBITRATION. ......................................... 1

    A.    The Agreement Delegates Arbitrability Disputes to the Arbitrator. ............. 2

    B.    MNA's Claims Fall Within the Broad Scope of the Agreement's
    Arbitration Provision. .................................................................................... 5

II.    COUNTS II AND III MUST BE DISMISSED. ..................................................... 8

    A.    MNA Is Pursuing a Duplicative Unjust Enrichment Claim. ........................ 8

    B.    MNA Cannot Allege a Material Omission to Support its Fraudulent
    Inducement Claim. ...................................................................................... 11

III.    CONCLUSION ..................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barron Partners, LP v. LAB123, Inc.*,
593 F. Supp. 2d 667 (S.D.N.Y. 2009)........................................................................... 12

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir. 1993)........................................................................................ 11

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ...................................................................................................... 4

*Cartagena Enters., Inc. v. J. Walter Thompson Co.*,
No. 13-CV-4238 (SAS), 2013 WL 5664992 (S.D.N.Y. Oct. 16, 2013)......................... 3

*Chase Manhattan Bank v. Motorola, Inc.*,
184 F.Supp.2d 384 (S.D.N.Y.2002)............................................................................ 12

*Cole v. Blackwell Fuller Music Publ'g*,
LLC, No. 16-CV-7014, 2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018)......................... 9

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)............................................................................................. 7

*Contec Corp. v. Remote Solution, Co., Ltd.*,
398 F.3d 205 (2d Cir. 2005).......................................................................................... 3

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)...................................................................................................... 2

*Gan v. GSUIG Real Est. Member LLC*,
797 F. Supp. 3d 69 (E.D.N.Y. 2025) ............................................................................ 9

*Guo v. IBM 401(k) Plus Plan*,
95 F. Supp. 3d 512 (S.D.N.Y. 2015)........................................................................... 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)........................................................................................................ 4

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
698 F.3d 58 (2d Cir. 2012)............................................................................................ 4

*Khurana v. Wahed Inv., LLC*,
  No. 18-CV-233, 2020 WL 364794 (S.D.N.Y. Jan. 8, 2020) ......................................... 7

*Life Ins. Fund Elite LLC v. Hamburg Com. Bank AG*,
  545 F. Supp. 3d 86 (S.D.N.Y. 2021) ............................................................................. 7

*McGriff v. Keyser*,
  No. 17-CV-7307, 2019 WL 6033421 (S.D.N.Y. Nov. 13, 2019) ................................. 9

*Pierce v. Fordham Univ., Inc.*,
  No. 15-CV-4589 (JMF), 2016 WL 3093994 (S.D.N.Y. June 1, 2016),
  *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ...................................................................... 12

*Pol'y Admin. Sols., Inc. v. QBE Holdings, Inc.*,
  No. 15-CV-2473 (CS), 2019 WL 4126464 (S.D.N.Y. Aug. 30, 2019) ..................... 2, 3

*Rent–A–Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ...................................................................................................... 4

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ........................................................................................................ 4

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
  830 F.3d 1335 (Fed. Cir. 2016) ................................................................................... 8

*WTA Tour, Inc. v. Super Slam Ltd.*,
  339 F. Supp. 3d 390 (S.D.N.Y. 2018) ......................................................................... 3

**Other Authorities**

Singapore International Arbitration Centre, *Arbitration Rules*,
  Section VI Rule 31 ....................................................................................................... 3

**INTRODUCTION**

MNA's[1] Opposition does it more harm than good.  Citing inapplicable authorities or none at all, MNA repeatedly reinforces London Luxury's grounds to compel arbitration—often by ignoring them.  While MNA tries to circumvent the Agreement's arbitration clause, MNA cannot avoid the parties' express agreement that an arbitrator—not a Court—would resolve any dispute over the arbitrability of MNA's claims.  MNA's attempt to apply the Agreement's narrow exception to arbitration for certain intellectual property disputes is similarly futile.  The Agreement states that this exception is reserved for disputes regarding ***the parties' preexisting*** intellectual property rights.  Here, no such rights are in dispute, and the case must proceed to arbitration.

In the alternative, MNA did not offer any basis to save its fraudulent inducement and unjust enrichment claims.  MNA does not dispute that its unjust enrichment claim is based on the same allegations as its contract and fraud claims.  And MNA points to no facts or authorities that would substantiate its fraudulent inducement claim, which fails because MNA did not allege a material omission made to intentionally induce reliance.  For these reasons, Counts II and III of the Amended Complaint must be dismissed.

**ARGUMENT**

**I.    MNA CANNOT AVOID BINDING ARBITRATION.**

MNA "does not dispute" that the Agreement—including "the arbitration provision contained therein"—is valid and enforceable. ECF No. 23 at 13.  Although MNA tries to

---

[1] Capitalized terms are as defined in London Luxury's Memorandum of Law (ECF No. 20), unless otherwise specified.

1

avoid the application of that arbitration clause, the Agreement requires that this dispute—including questions of arbitrability—be resolved through arbitration.

### A.    The Agreement Delegates Arbitrability Disputes to the Arbitrator.

The parties expressly agreed that an arbitrator—not the Court—would resolve any dispute concerning the arbitrability of MNA's claims.  As London Luxury explained in its Opening Brief, courts consistently hold that a contract that incorporates arbitration rules like the SIAC rules conclusively delegates the question of arbitrability to the arbitrator. *See* ECF No. 20 at 6–8.  MNA does not even mention these authorities in its opposition, let alone meaningfully respond to them. *See generally* ECF No. 23.

Instead, MNA argues—incorrectly—that the Agreement is silent on the issue of arbitrability. *See id.* at 9–12.  MNA is wrong, as the parties clearly agreed that an arbitrator would resolve any arbitrability disputes.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (the question "who has the primary power to decide arbitrability" turns upon whether the parties agreed to submit that question to arbitration).  Section 8.2 of the Agreement provides that "any dispute or Action arising out of or in connection with this Contract, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the [SIAC Rules]… ***which rules are deemed to be incorporated by reference in this clause***." ECF No. 16-2 § 8.2 (emphasis added).

The language in Section 8.2 is even clearer and more explicit than that found in other cases where courts held that the parties delegated questions of arbitrability to an arbitrator. *See, e.g., Pol'y Admin. Sols., Inc. v. QBE Holdings, Inc.*, No. 15-CV-2473 (CS),

2019 WL 4126464, at *5 (S.D.N.Y. Aug. 30, 2019) (contract reserved arbitrability for arbitrator to resolve where it stated that the parties "agree to binding arbitration in New York City, New York pursuant to the Rules of the American Arbitration Association"). The Agreement goes even further than the contract in *Policy Administration Solutions*, as it expressly "incorporated [the SIAC Rules] by reference in this clause." *See* ECF No. 16-2 § 8.2.

By incorporating the SIAC Rules into the Agreement, the parties expressly agreed that "the Tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, validity, applicability, or scope of the arbitration agreement." Singapore International Arbitration Centre, *Arbitration Rules*, Section VI Rule 31, available at https://siac.org.sg/wp-content/uploads/2025/04/SIAC-Rules-7th-Edition_250825.pdf. This language could not be clearer, and MNA does not dispute that it is bound by it. *See* ECF No. 23 at 13 ("Plaintiff does not dispute the validity of . . . the arbitration provision."). Courts in this Circuit consistently find that when a contract incorporates arbitration rules that authorize an arbitrator to rule on its own jurisdiction, that is "clear and unmistakable evidence that" the parties agreed to delegate questions of arbitrability to the arbitrator. *Pol'y Admin. Sols.*, 2019 WL 4126464, at *5; *see also, e.g.*, *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 402 (S.D.N.Y. 2018); *Cartagena Enters., Inc. v. J. Walter Thompson Co.*, No. 13-CV-4238 (SAS), 2013 WL 5664992, at *2–3 (S.D.N.Y. Oct. 16, 2013).

3

As a result, an arbitrator—not the Court—must resolve MNA's arguments about whether its claims fall within the scope of the Agreement's arbitration provision. Courts must enforce arbitration agreements according to their terms, including agreements to delegate questions of arbitrability. *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

MNA did not address this authority or the Agreement's plain language. *See generally* ECF No. 23. Instead, MNA inaccurately claims that *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012), stands for the purported proposition that a court may "decide whether an issue is arbitrable" if "an arbitration clause itself is at issue." *See* ECF No. 23 at 10. But *Ipcon* does not address the ***arbitrability*** of a claim, as MNA appears to be suggesting. Rather, *Ipcon* concerned a challenge to the ***formation of the contract itself***—not the applicability of an arbitration clause to particular claims. *See* 698 F.3d at 61 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)); *see also Buckeye*, 546 U.S. at 444 (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984), as an example of a challenge to agreement to arbitrate, where arbitration clause was challenged as void under California law).

There is no such dispute here, as "Plaintiff does not dispute the validity of the Contract or, consequentially, the arbitration provision contained therein." ECF No. 23 at

13. Thus, MNA's authorities—which concern challenges to the validity of an arbitration agreement, *see id.* at 10–12—are inapplicable. MNA has no response on the issue of arbitrability, and an arbitrator—not the Court—must resolve any dispute as to whether MNA's claims fall within the scope of the Agreement's arbitration provision.

**B.      MNA's Claims Fall Within the Broad Scope of the Agreement's Arbitration Provision.**

If the Court reaches MNA's arbitrability arguments—even though the Agreement reserves such disputes for an arbitrator to resolve—MNA's claims are plainly subject to arbitration. The Agreement's arbitration provision covers "any dispute arising out of or in connection with" the Agreement. *See* ECF No. 16-2 § 8.2. MNA once again ignores this language and fails to point to any authorities to support its attempt to avoid arbitration.

The Agreement's only narrow exception to arbitration applies to ***disputes*** regarding the ***preexisting*** intellectual property rights ***of the parties***. ECF No. 16-2 at § 8.3. Here, MNA's claims have nothing to do with any disputed intellectual property rights, much less intellectual property rights of the ***parties***. MNA's only references to purported intellectual property rights are its allegation that the Agreement provided for MNA to repackage and export Ansell brand gloves, and its allegation that MNA and London Luxury did not have a license to those gloves. *Compare* ECF No. 20 at 10 and ECF No. 16 ¶¶ 10, 12, 93–97 *with* ECF No. 23 at 14–15. At most, MNA's allegation concerns ***third party*** intellectual property rights, not the parties' preexisting intellectual property rights.

That is fatal to MNA's argument, as the Agreement defines "Intellectual Property" as "intellectual property rights that [were] ***developed and/or owned by either Party*** prior

5

to and independently of its arrangements with the other Party under this Contract." *Id.* § 3.1.23 (emphasis added).  MNA's argument therefore fails, as the ***only*** alleged intellectual property rights MNA even mentioned are non-party Ansell's purported rights.  *See* ECF No. 16 ¶¶ 10, 12, 93–97.

In its Opposition, MNA argues that, because London Luxury allegedly did not have a license for Ansell brand gloves, London Luxury's ***lack of intellectual property rights*** is therefore at issue.  *See* ECF No. 23 at 14 ("If [London Luxury] or Walmart, [London Luxury's] customer, had the requisite intellectual property rights to the patent(s) and trademark(s) maintained by Ansell with respect to Ansell gloves, then the brand of glove repackaged by Plaintiff would never have been at issue between the parties.").

This convoluted theory contravenes the plain text of Section 8.3.  Even accepting MNA's strained logic, and assuming that the alleged ***non-existence*** of intellectual property rights somehow implicates London Luxury's rights, this dispute still would not fit the Agreement's definition.  Indeed, the definition of "Intellectual Property" shows that the term contemplates only the rights belonging the parties ***prior to entering the Agreement***. *See* ECF No. 16-2 § 3.1.23 (defining "Intellectual Property" as rights "developed and/or owned by either Party ***prior to and independently of its arrangements with the other Party under this Contract*** (emphasis added)).  MNA ignores this language, but the consequence is clear: the Agreement requires a dispute regarding ***preexisting*** intellectual property rights—not hypothetical third party intellectual property rights.

Even if Ansell's intellectual property rights could somehow trigger Section 8.3, MNA cannot use cursory references to such third party rights to transform its contract claim

6

into a "dispute" about intellectual property rights.  Even under the most generous reading, MNA's allegations concerning intellectual property do not amount to a dispute.  MNA appears to identify two so-called intellectual property issues: (1) whether London Luxury had rights to use Ansell brand gloves; and (2) whether performance under the contract was impracticable, because MNA allegedly could not procure Ansell gloves. *See* ECF No. 23 at 14–15. But these issues are fundamentally ***contract*** disputes.  MNA's allegations that vaguely reference purported intellectual property rights are tangential, irrelevant assertions that MNA smuggles into its Amended Complaint in an attempt to avoid arbitration.

Such language regarding attenuated issues cannot transform the substance of MNA's claim into an intellectual property dispute.  MNA does not challenge the maxim that courts must "focus on the allegations in the complaint" regardless of "legal labels." *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 21–22 (2d Cir. 1995); *see also Life Ins. Fund Elite LLC v. Hamburg Com. Bank AG*, 545 F. Supp. 3d 86, 92 (S.D.N.Y. 2021) (holding that, when analyzing claims, merely "employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim"); *Khurana v. Wahed Inv., LLC*, No. 18-CV-233, 2020 WL 364794, at *11 (S.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, No. 18-CV-0233 (LAK), 2020 WL 364022 (S.D.N.Y. Jan. 22, 2020) (similar).

More importantly, the substantive claims in the Amended Complaint boil down to a more limited set of facts that have no connection whatsoever to alleged intellectual property.  The crux of MNA's claims concerns: (1) the alleged failure "to arrange for or to enable [MNA] to assist productively in arranging for the nitrile gloves to be repackaged

and exported"; the alleged failure "to place purchase orders for and remit payments to Plaintiff for nitrile gloves to be obtained, repackaged, stored, and exported"; and the alleged "wrongful[] terminat[ion of] the Contract and fraudulent[] induc[ement of] Defendant to sign the Second Amendment."  ECF No. 17 ¶ 20; *see also id.* ¶¶ 288–316. Whether the parties had rights to package and/or resell Ansell brand gloves is purely incidental to MNA's contract and fraud claims.  In other words, none of these claims "put the scope of licensed [intellectual property] rights in issue." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1340 (Fed. Cir. 2016) (defendant brought counterclaims for declaratory judgment of non-infringement, and contract claims were predicated on the finding that infringement allegations were meritless).

MNA's attempt to transform its contract and fraud claims into an intellectual property dispute is nothing more than a sideshow. Accordingly, the claims fall squarely within the Agreement's broad arbitration provision.

## II.    COUNTS II AND III MUST BE DISMISSED.

In its Opposition, MNA did not identify any basis to save its unjust enrichment and fraudulent inducement claims.  Accordingly, Counts II and III must be dismissed.

### A.    MNA Is Pursuing a Duplicative Unjust Enrichment Claim.

MNA's unjust enrichment claim must be dismissed as duplicative.  As an initial matter, MNA appears to abandon its wrongful termination theory of unjust enrichment. *See* ECF No. 16 ¶ 298 ("Defendant has been unjustly enriched by its wrongful termination of the Contract").  As London Luxury argued in its brief, such a claim would be governed by the Agreement's termination provision and, therefore, must be dismissed as duplicative.

8

*See* ECF No. 20 at 19–20.  MNA does not dispute, or even address, this point, and therefore the Court must dismiss Count II to the extent it is premised on this theory.  *See, e.g.*, *McGriff v. Keyser*, No. 17-CV-7307, 2019 WL 6033421, at \*12 n.9 (S.D.N.Y. Nov. 13, 2019) (Plaintiff abandoned claim "by failing to address any arguments on this issue in his [o]pposition brief"); *Cole v. Blackwell Fuller Music Publ'g*, LLC, No. 16-CV-7014, 2018 WL 4680989, at \*7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument.").

Further, MNA cannot dispute that the other component of its claim—premised on the alleged "inducement of Plaintiff's signature on the Second Amendment"—is entirely duplicative of its fraud claim.  ECF No. 16 ¶ 298.  Instead, MNA claims that it can pursue unjust enrichment "in the alternative" to its fraud claim.  *See* ECF No. 23 at 20.  MNA is mistaken.  If MNA's fraud claim fails, then MNA has no challenge to the validity of the Second Amendment, which is fatal to MNA's attempt to pursue alternative claims for unjust enrichment and breach of contract.  *See Gan v. GSUIG Real Est. Member LLC*, 797 F. Supp. 3d 69, 113 (E.D.N.Y. 2025) ("Plaintiffs may be able to plead both unjust enrichment and breach of contract as alterative theories for the overlapping factual allegations, but only if there is a genuine dispute as to the validity of the contract in question.").  Regardless, the Agreement would, at a minimum, govern whether it was appropriate for MNA to accrue expenses up front, necessitating dismissal of the unjust enrichment claim.  *See* ECF No. 16 ¶ 15 ("During their negotiations, the Parties agreed, in no uncertain terms, that Defendant was responsible for advancing all payments to Plaintiff

9

since Plaintiff would be remitting payment to the manufacturer of the Gloves on Defendant's behalf for logistical efficiency; this was a material part of the Parties' agreement.").

Perhaps recognizing that its unjust enrichment claim is fatally redundant, MNA attempts to craft new theories that are not in the Amended Complaint. This is impermissible. MNA argues that London Luxury was unjustly enriched because it "benefited from the appearance of being in contract with [MNA] under the Second Amendment" and from MNA advancing costs, thereby (somehow) facilitating London Luxury's lawsuit against Walmart. ECF No. 23 at 18. Notably, MNA cites no authorities supporting this theory of unjust enrichment. But more importantly, MNA's Amended Complaint does not support this new argument, as Count II says ***nothing*** about London Luxury's lawsuit against Walmart. *See* ECF No. 16 ¶¶ 297–303. Indeed, this Court specifically granted MNA an opportunity to amend its complaint to substantiate its allegations so that there would not be successive rounds of briefing on this Motion, *see* Dkt. Entry dated 12/15/2025, and MNA did not include this new theory in its amended pleading. MNA cannot now use its Opposition to correct its pleading deficiencies. *See, e.g.*, *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015) ("A complaint cannot be amended merely by raising new facts and theories in a plaintiff's opposition papers." (internal quotations omitted)). MNA's unjust enrichment claim must be dismissed.

10

**B.**     **MNA Cannot Allege a Material Omission to Support its Fraudulent Inducement Claim.**

MNA's fraud claim is based on two alleged omissions: (1) London Luxury's alleged plans to open its own nitrile glove manufacturing facility, and (2) a purported fraudulent agreement by Walmart to an increased purchase commitment.  *See* ECF No. 23 at 21; *see also* ECF No. 16 ¶ 133.  MNA cites no analogous cases to support this argument, which remains flawed for several reasons.

First, a plaintiff must plausibly allege that the defendant *knew* that its omission would induce reliance.  *See, e.g.*, *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 152 (2d Cir. 1993).  Nothing in MNA's Amended Complaint supports this conclusion.  MNA claims that London Luxury allegedly "took advantage of [MNA's] financial position, knowing that [MNA] had invested significantly in this project from leading a warehouse to fronting costs for boxes of gloves and that Plaintiff was relying on [London Luxury] to begin performing under the Contract or otherwise."  ECF No. 23 at 21 (citing ECF No. 16 ¶¶ 62, 68, 80, 107–09, 174–79, 232).  But these allegations describe nothing more than the details of the parties' negotiations and obligations regarding the allocation of costs and expenses, and MNA's ultimate decision to obtain the gloves on credit.  Such allegations do not give rise to the inference that London Luxury knew MNA acted in reliance on its statements—or even the mere fact that MNA relied on the purported omissions.  This is fatal to its fraudulent omission claim.

Second, MNA contradicted its claim that it relied on these alleged omissions.  *See* ECF No. 16 ¶ 14 ("Worried that Defendant was going to continue breaching the Contract

and would not otherwise ever perform, Plaintiff executed the Second Amendment."); ¶ 136 ("Plaintiff was concerned about being able to continue operations, pay its workers, and fulfill its rent obligations to the facility's landlord."); ¶ 140 ("Upon information and belief, Defendant led Plaintiff to believe that it did not have an option but to enter into the Second Amendment."); ¶ 144 ("[MNA] was concerned about keeping its business afloat and was concerned about [London Luxury] reneging on the Contract prior to entering into the Second Amendment."). MNA merely ignores this inconsistency, but MNA's contradictory allegations make MNA's theory implausible under Rule 12(b)(6). *Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589 (JMF), 2016 WL 3093994, at \*2 n. 1 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ("It is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (internal citations and quotations omitted)).

Third, MNA cannot claim it relied on an alleged failure to disclose an allegedly *fraudulent* purchase commitment from Walmart. MNA's ignorance of an allegedly *ineffective* agreement is not material and cannot induce reliance. "An omission of fact is material if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 672 (S.D.N.Y. 2009) (quoting *Chase Manhattan Bank v. Motorola, Inc.*, 184 F.Supp.2d 384, 394 (S.D.N.Y.2002)). But MNA cannot act in reliance on information—or the ignorance of information—that MNA claims is not even true, meaning it is irrelevant. *See id.* at 672–73 (dismissing stock purchaser's fraudulent

12

inducement claim because allegedly omitted information regarding company's CEO's prior criminal conviction "had no bearing on [CEO's] character for truthfulness" and therefore "cannot . . . be viewed as a material omission").

In sum, MNA cannot meet the requirements of 12(b)(6)—let alone the exacting standards of Rule 9(b)—and its fraudulent inducement claim must be dismissed.

## III.   CONCLUSION

For the foregoing reasons, and the reasons stated in London Luxury's Opening Brief, London Luxury respectfully requests that the Court dismiss this action in favor of binding arbitration. In the alternative, should the Court consider the merits of MNA's Amended Complaint, the Court should dismiss both Counts II and III of the Amended Complaint.

Dated:  New York, New York

April 24, 2026                                                **COZEN O'CONNOR**


By: */s/Jeffrey M. Monhait*

Jeffrey M. Monhait
Emma Scully
3WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
215-665-2084
212-453-3875
jmonhait@cozen.com
escully@cozen.com

 *Attorneys for Defendant*
*London Luxury LLC*

13

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this Memorandum of Law contains 3,442 words, and thus complies with the word-count limitations in Local Civil Rule 7.1(c).  In making this certification, I have relied on the word count of the word-processing program used to prepare this Memorandum of Law.

14